[No. S022903. July 1, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS ROMERO SAUNDERS, Defendant and Appellant.

582

**COUNSEL**

Paul M. Posner, under appointment by the Supreme Court, for Defendant and Appellant.

Fern M. Laethem, State Public Defender, Therene Powell, Deputy State Public Defender, Wilbur F. Littlefield, Public Defender (Los Angeles),

Laurence M. Sarnoff and Douglas J. Goldstein, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Edward T. Fogel, Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Susan D. Martynec, John R. Gorey and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

Michael R. Capizzi, District Attorney (Orange) and E. Thomas Dunn, Jr., Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

Gardner & Derham and Cliff Gardner as Amici Curiae.

## OPINION

**GEORGE, J.**—Numerous California penal statutes allow increased punishment to be imposed upon a defendant if the prosecution alleges and proves that the defendant has suffered one or more prior convictions. In *People v. Bracamonte* (1981) 119 Cal.App.3d 644, 654 [174 Cal.Rptr. 191], the Court of Appeal held that the defendant is entitled to have the determination of the truth of such allegations bifurcated from the jury trial of the currently charged offenses.

In the present case, we consider whether further proceedings to determine the truth of alleged prior convictions are barred if, after such bifurcation has been ordered, the jury returns a verdict of guilty and is discharged, without objection by the defendant, before the truth of the prior conviction allegations has been determined or a jury waiver taken as to those allegations. For the reasons that follow, we conclude that in such circumstances, further proceedings to determine the truth of the prior conviction allegations are not prohibited either by statute or by the double jeopardy clauses of the federal and state Constitutions. Accordingly, we disapprove the contrary holdings in *People v. Wojahn* (1984) 150 Cal.App.3d 1024 [198 Cal.Rptr. 277] and its progeny.

### FACTS

Defendant Dennis Romero Saunders was charged with attempted murder (Pen. Code, §§ 664/187, subd. (a)),[1] burglary (§ 459), and assault with a firearm (§ 245, subd. (a)(2)). Further allegations (pursuant to § 667.5, subd. (b)) included: that he had been convicted (in case No. 75-68(R)) of the

---

[1]All further statutory references are to the Penal Code, unless otherwise noted.

felony offense of possession of stolen mail and had served a prior prison term for that offense, had been convicted (in case Nos. A-079140 and A-079878) of the felony offenses of rape (two counts), oral copulation (two counts), assault with a deadly weapon, burglary (three counts), and robbery (six counts) and had served a prior prison term for those offenses, and had been convicted (in case No. A-737687) of the felony offense of attempted robbery and had served a prior prison term for that offense.

Defendant pleaded not guilty and denied each allegation. The court docket reflects that, immediately prior to trial, the "[i]ssue of prior convictions [was] bifurcated." A jury trial commenced, but ended in a mistrial when the jury was unable to reach a verdict on the current offenses.

Immediately prior to commencement of the second jury trial, the trial court, on defendant's motion, again bifurcated determination of the truth of the alleged prior convictions from trial of the remaining charges and allegations. The trial court ruled, however, that should defendant testify, his prior convictions relating to credibility could be employed to impeach his testimony.

Defendant did testify, stating he was on parole at the time of the alleged offenses and previously had been convicted of possession of stolen mail, three counts of burglary, six counts of robbery, and one count of attempted robbery.

When the jury returned its verdict on the current offenses, the deputy public defender who represented defendant at trial, Janet Aldapa, was not present, and defendant was represented by Deputy Public Defender Ron Brown. The jury found defendant guilty of burglary, but not guilty of attempted murder or assault with a firearm. The trial court then discharged the jury and continued the case to the following day, when defendant appeared, represented by Ms. Aldapa.

The trial court at that time indicated its understanding, which Ms. Aldapa confirmed, that defendant wished to waive his right to jury trial as to the alleged prior convictions. Defendant then personally waived that right, as did the People. The prosecutor submitted certified records of the prior convictions, which were admitted into evidence without objection; the truth of the allegations was submitted to the court, and proceedings were adjourned to the following court day.

When the case resumed, Ms. Aldapa stated that when she had advised defendant to waive his right to jury trial as to the alleged prior convictions,

she was unaware the jury had been discharged. In response, the trial court recalled that Ms. Aldapa had stated, in a discussion held off the record during the course of the second jury trial, that her client would waive his right to jury trial as to the alleged prior convictions. Ms. Aldapa admitted having told the court she would advise her client to waive his right to jury trial but claimed that had she known the jury had been discharged after returning its verdict, she would not have so advised her client. The trial court then permitted defendant to withdraw his waiver of his right to jury trial as to the alleged prior convictions.

Following a brief recess, defendant entered a plea of once in jeopardy and moved to dismiss the allegations of prior convictions. The trial court denied the motion. The truth of the alleged prior convictions was tried to a new jury, which found true each of the above mentioned allegations. Defendant was sentenced to state prison for the high term of three years on the burglary charge, plus one year for each of the three prior prison terms (§ 667.5, subd. (b)), for a total term of six years.

Defendant appealed, raising the contention, among others, that impanelling a new jury to determine the truth of the prior conviction allegations violated state statutory law and unconstitutionally placed him twice in jeopardy. After the Court of Appeal affirmed the judgment, we granted defendant's petition for review to determine whether, after discharge of the jury under the circumstances here present, the trial court was barred from conducting further proceedings to determine the truth of the prior conviction allegations.

DISCUSSION

*Statutory Provisions*

The procedure established by the Legislature for the proof of allegations of prior convictions has not been altered substantially for nearly a century. Section 1025, enacted originally in 1874,[2] provides: "When a defendant who is charged in the accusatory pleading with having suffered a previous conviction pleads either guilty or not guilty of the offense charged against him, he must be asked whether he has suffered such previous conviction. . . . If he answers that he has not, . . . the question whether or not he

---

[2]Section 1025 has an unusual history. Enacted in substantially its present form in 1874, it was repealed in 1880 and reenacted in 1901. (Code Amends. 1873-1874, ch. 614, § 50, p. 439; Code Amends. 1880, ch. 47, § 56, p. 19; Stats. 1901, ch. 158, § 237, p. 486.) But this court invalidated the 1901 revision of the Penal Code, of which the reenactment of section 1025 was a part. (*Lewis* v. *Dunne* (1901) 134 Cal. 291 [66 P. 478].) In 1905, section 1025 again was reenacted. (Stats. 1905, ch. 574, § 6, p. 773.) Only minor amendments, not relevant here, have been made to the statute subsequent to the latter reenactment.

has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty . . . . In case the defendant pleads not guilty, and answers that he has suffered the previous conviction, the charge of the previous conviction must not be read to the jury, nor alluded to on the trial."[3]

At the time section 1025 was enacted, a defendant who was alleged to have suffered a prior conviction had two choices: admit the alleged prior conviction, or have the truth of the allegation determined concurrently—during the trial of the current charges—by the jury entrusted with deciding the defendant's guilt or innocence of those charges. On numerous occasions, this procedure was upheld against challenges by defendants. (*People* v. *Owens* (1980) 112 Cal.App.3d 441, 446-447 [169 Cal.Rptr. 359], and cases cited therein; see also *People* v. *Coleman* (1904) 145 Cal. 609, 611-613 [79 P. 283].)

The foregoing procedure reflected the state of the law until 1981, when the Court of Appeal in *People* v. *Bracamonte, supra,* 119 Cal.App.3d 644, held that a defendant who denies an alleged prior conviction "is entitled to a bifurcated proceeding wherein the jury is not informed of his prior convictions, either through allegations in the charge or by the introduction of evidence, until it has found the defendant guilty." (*Id.* at p. 654.)[4] The court in *Bracamonte* observed that a rule requiring a bifurcated trial was not in conflict with section 1025: "While section 1025 does state that 'the question whether or not he *has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty*' (italics added), it does not state nor imply that the jury should try both issues simultaneously." (119 Cal.App.3d at p. 652, italics in original.)

In 1984, the Court of Appeal in *People* v. *Wojahn, supra,* 150 Cal.App.3d 1024, addressed what in subsequent years would prove to be a recurring problem. As required by the rule announced in *Bracamonte, supra,* 119 Cal.App.3d 644, the trial court in *Wojahn* bifurcated the determination of the truth of the defendant's alleged prior conviction from the trial of the pending

---

[3]Also in 1874, section 1093 was amended to provide, as it still does today, that at the commencement of a felony trial, the clerk shall read to the jury the accusatory pleading but, in the event the defendant admits having suffered an alleged prior conviction, the clerk "shall omit therefrom all that relates to such previous conviction." (Code Amends. 1873-1874, ch. 614, § 63, p. 444.) That same year, section 1158 was amended to provide, as it still does today, that in the event the defendant is alleged to have suffered a prior conviction, the jury must, "unless the answer of the defendant admits [such prior conviction], find whether or not he has suffered such previous conviction." (Code Amends. 1873-1874, ch. 614, § 67, p. 446.)

[4]We previously have not addressed, and do not address in the present case, the validity of this " 'judicially declared rule[ ] of practice.' " (*Id.* at p. 655.)

charges. But after the jury returned a verdict of guilty, the court discharged the jury without having submitted to the jury the determination of the truth of the alleged prior conviction. Three weeks later, over the defendant's objection, the court instituted a new proceeding to determine the truth of the prior conviction allegation; the defendant waived his right to a jury trial, and the court found the allegation to be true.

The Court of Appeal in *Wojahn*, concluding that the proceeding to determine the truth of the alleged prior conviction placed the defendant twice in jeopardy, directed the trial court to strike the sentence enhancement that was based upon the prior conviction. (*People* v. *Wojahn, supra*, 150 Cal.App.3d 1024, 1035.)

In 1988, four years after the decision in *Wojahn*, the Legislature amended section 1164 to add subdivision (b), which provides: "No jury shall be discharged until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it, including, but not limited to, the degree of the crime or crimes charged, and the truth of any alleged prior conviction whether in the same proceeding or in a bifurcated proceeding." One apparent purpose of this amendment was to prevent recurrence of the situation that arose in *Wojahn* by directing the trial court not to discharge the jurors until the court had confirmed that any alleged prior convictions had been considered by them.

In the present case, the trial court violated sections 1025 and 1164 by discharging the jury before the jury had determined the truth of the alleged prior convictions. But defendant did not call this error to the court's attention by timely objection. ▮▮ ▬▬ As we shall explain, defendant's failure to object precludes his obtaining appellate relief on the basis of the statutory error committed by the trial court.[5]

▮ " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted,

---

[5]Defendant's failure to object does not preclude his arguing on appeal that he was placed twice in jeopardy. (*People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 77, fn. 20 [2 Cal.Rptr.2d 389, 820 P.2d 613]). Defendant's double jeopardy claim is discussed later in this opinion. Defendant's failure to object also would not preclude his asserting on appeal that he was denied his constitutional right to a jury trial. (Cal. Const., art. I, § 16; *People* v. *Holmes* (1960) 54 Cal.2d 442, 443-444 [5 Cal.Rptr. 871, 353 P.2d 583].) But defendant was not denied his right to a jury trial regarding the truth of the alleged prior convictions. He expressly waived that right and later, after the trial court granted his motion to withdraw his waiver, was afforded a jury trial on that issue. The rule that a waiver of the constitutional right to a jury trial must be express has no application to the statutory right to have the same jury that determined defendant's guilt of the currently charged offenses determine the truth of alleged prior convictions.

where an objection could have been, but was not, presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' " (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261], italics in *Doers*.) " 'The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . .' " (*People* v. *Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861].) ▮▮▮▮ " 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' [Citation.]" (*United States* v. *Olano* (1993) __ U.S. __, __ [123 L.Ed.2d 508, 517, 113 S.Ct. 1770].[6]

"The rationale for this rule was aptly explained in *Sommer* v. *Martin* (1921) 55 Cal.App. 603 at page 610 [204 P. 33] . . . : ' "In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' " (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 784 [174 Cal.Rptr. 348].)

▮ Thus, although sections 1025 and 1164 prohibit a trial court from discharging a jury until it has determined the truth of any alleged prior convictions, a defendant may not complain on appeal of a departure from this procedural requirement unless the error has been brought to the attention of the trial court by means of a timely and specific objection. We do not believe that the Legislature, in enacting sections 1025 and 1164, intended to create a procedural trap that would enable defense counsel to ambush the

---

[6]*In this context, the terms "waiver" and "forfeiture" have long been used interchangeably. The United States Supreme Court recently observed, however: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' [Citations.]" (*United States* v. *Olano, supra,* __ U.S. __, __ [123 L.Ed.2d 508, 519].) Thus, it probably is most accurate to denominate defendant's failure to object to the discharge of the jury that determined his guilt as a forfeiture, rather than a waiver, of his statutory right to have that jury determine the truth of the alleged prior convictions.*

trial judge and deprive the People of their statutory right to prove one or more alleged prior convictions for the purpose of enhancing the punishment of the repeat offender. Nor should the law place a defense attorney in the untenable position of having to choose between honoring counsel's commitment to the court (that jury trial on the prior conviction allegation would be waived) and counsel's duty to his or her client (to offer all available defenses to the charges and allegations contained in the accusatory pleading).[7]

In the present case, the trial court discharged the jury after it returned a guilty verdict, because the court—reasonably, in light of defense counsel's representations—believed that defendant did not wish to have the issue of the truth of the prior conviction allegations determined by the jury. Defendant did not object to the discharge of the jury and, thereafter, waived his right to a jury trial as to the alleged prior convictions. Defendant, on the advice of counsel, subsequently changed his mind, and the trial court permitted him to withdraw his jury waiver. A new jury was impanelled and determined the truth of the alleged prior convictions.

 Defendant was not deprived of his right to a jury trial. Nor can he properly claim on appeal that he was denied his statutory right to a determination of the alleged prior convictions by the same jury that determined his guilt. He forfeited that right by failing to object in a timely fashion when the jury was discharged. ██ ██ ██ Defendant is precluded, therefore, from arguing on appeal that reversal of the judgment is required because the trial court violated sections 1025 and 1164, subdivision (b), by discharging

---

[7]In her dissent, Justice Kennard asserts that our conclusion imposes an obligation on the defense to bring to the court's attention the prosecution's failure to present its evidence at the appropriate time. (*Post*, at p. 601.) In advancing this argument, however, the dissent fails to consider that the issue of the prior conviction enhancement had been bifurcated from the issue of guilt at defendant's request, and that the portion of the proceedings concerning the prior conviction allegations had not yet begun when the jury was dismissed. Thus, our conclusion does not require the defense to remind the prosecution to present its evidence in a timely manner, but merely requires the defense to object to the discharge of the jury in the event it wishes to assert its statutory right to have the same jury that found defendant guilty also determine the truth of the prior conviction allegations.

Justice Kennard's dissent also asserts that as a general rule, "[a] party forfeits a legal right by silence only when the law allocates to that party the legal duty or obligation to speak." (*Post*, at p. 601, fn. omitted.) None of the authorities cited in the dissent announce such a rule. Instead, the dissent apparently gleans this rule from the existence of various claims that may be raised on appeal in the absence of an objection. Although the dissent describes several circumstances, not present here, in which a claim may be raised on appeal in the absence of a timely objection in the court below, these are discrete exceptions to the well-established general rule, stated above, that a failure to object results in a forfeiture of the right sought to be asserted. None of the cases cited in the dissent questions this general rule or purports to limit it in the manner suggested by the dissent.

the jurors before they could determine the truth of the prior-conviction allegations.[8]

Defendant's failure to object does not, however, preclude his arguing on appeal that he was deprived of his constitutional right not to be placed twice in jeopardy. (*People* v. *Superior Court (Marks), supra,* 1 Cal.4th 56, 77, fn. 20; *Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345].) We now consider that issue.

### Double Jeopardy

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This guarantee is applicable to the states

---

[8]In her dissent, Justice Kennard describes as a "new rule" our holding that, by failing to object, defendant forfeited his statutory rights under section 1025 (to have the same jury determine defendant's guilt and the truth of the prior conviction allegations), the dissent therefore concluding that this holding "may not be applied retroactively when existing law did not require an objection." (*Post,* at p. 606.) Justice Kennard bases her conclusion (that existing law did not require an objection) on the holding of the Court of Appeal in *People* v. *Wojahn, supra,* 150 Cal.App.3d 1024, and this court's pattern of denying review in cases discussing this issue following *Wojahn* and ordering depublication of cases critical of *Wojahn.* The dissent's analysis is flawed.

To begin with, the dissent errs in concluding that by denying review in some cases and ordering depublication of the opinions in others, this court "endorsed" the decision in *Wojahn.* (*Post,* at p. 607.) We recently reaffirmed "the well-established rule in this state that a denial of a petition for review is not an expression of opinion of the Supreme Court on the merits of the case. [Citations.]" (*Camper* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 689, fn. 8 [12 Cal.Rptr.2d 101.) Consistently with the foregoing principles, rule 979(e) of the California Rules of Court, adopted in 1990, declares that "[a]n order of the Supreme Court directing depublication of an opinion in the Official Reports shall not be deemed an expression of opinion of the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion."

In any event, the decision in *Wojahn* was premised entirely upon double jeopardy principles. The opinion in that case does not address the issue whether the defendant's failure to object to the discharge of the jury resulted in a forfeiture of his statutory rights under section 1025. Because "an opinion is not authority for a proposition not therein considered" (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]), defendant cannot be deemed to have relied upon *Wojahn* in failing to assert his rights under section 1025.

No case has held that a claimed violation of section 1025 may be asserted on appeal in the absence of an objection in the trial court. Accordingly, the dissent is mistaken in relying upon the rule stated in *People* v. *Welch* (1993) 5 Cal.4th 228, 238 [19 Cal.Rptr.2d 520, 851 P.2d 802], excusing a failure to object "where existing law overwhelmingly said no such objection was required." (Fn. omitted.) Our holding in the present case, that because defendant failed to object on this ground in the trial court he is precluded from arguing on appeal that he was denied his *statutory* rights under section 1025, is an application of settled principles and does not announce a new rule of law.

Like the Court of Appeal in *Wojahn,* however, we conclude that defendant's failure to object to the discharge of the jury did not waive his *double jeopardy* claim. We address the merits of that claim below.

through the Fourteenth Amendment. (*Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056], overruling *Palko* v. *Connecticut* (1937) 302 U.S. 319 [82 L.Ed.2d 288, 58 S.Ct. 149].) Similarly, article I, section 15, of the California Constitution provides: "Persons may not twice be put in jeopardy for the same offense . . . ."

■ Defendant contends that impanelling a new jury to determine the truth of the prior conviction allegations placed him once again in jeopardy. We assume, without deciding, that double jeopardy principles apply to allegations of prior convictions (see, e.g., *People* v. *Superior Court (Marks)*, *supra*, 1 Cal.4th 56, 78, fn. 22 [double jeopardy principles apply to use-of-a-firearm allegation]; *People* v. *Bonner* (1979) 97 Cal.App.3d 573, 575 [158 Cal.Rptr. 821] [double jeopardy principles apply to an enhancement allegation of possession for sale of more than a specified quantity of heroin]; *Lockhart* v. *Nelson* (1988) 488 U.S. 33, 37-38, fn. 6 [102 L.Ed.2d 265, 271-272, 109 S.Ct. 285] [assuming, without deciding, that double jeopardy principles apply to noncapital sentencing proceedings]), and that jeopardy attached as to the alleged prior convictions at the time the jury was sworn to determine defendant's guilt of the current charges. (Cf. *Serfass* v. *United States* (1975) 420 U.S. 377, 388 [43 L.Ed.2d 265, 273-274, 95 S.Ct. 1055].) But we conclude, for the reasons that follow, that because the anticipated proceedings relating to the alleged prior convictions had not yet transpired at the time the trial court discharged the jury, jeopardy did not then terminate as to those allegations. Accordingly, the conduct of further trial proceedings as to the alleged prior convictions did not place defendant twice in jeopardy.

■ " 'The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . .' " (*Serfass* v. *United States, supra*, 420 U.S. 377, 387 [43 L.Ed.2d 265, 273, 95 S.Ct. 1055].) Courts "have disparaged 'rigid, mechanical' rules in the interpretation of the Double Jeopardy Clause. [Citation.]" (*Id.* at p. 390 [43 L.Ed.2d at p. 275].) "The exaltation of form over substance is to be avoided." (*United States* v. *DiFrancesco* (1980) 449 U.S. 117, 142 [66 L.Ed.2d 328, 349, 101 S.Ct. 426].) The standards for determining when a double jeopardy violation has occurred are not to be applied mechanically. (*Arizona* v. *Washington* (1978) 434 U.S. 497, 506 [54 L.Ed.2d 717, 728-729, 98 S.Ct. 824]; see *Illinois* v. *Somerville* (1973) 410 U.S. 458, 469 [35 L.Ed.2d 425, 433-434, 93 S.Ct. 1066].)

In *Ohio* v. *Johnson* (1984) 467 U.S. 493 [81 L.Ed.2d 425, 104 S.Ct. 2536], the defendant was indicted for murder, involuntary manslaughter, aggravated robbery, and grand theft as a result of the killing of Thomas Hill and the

theft of property from Hill's apartment. At his arraignment, the defendant offered to plead guilty to involuntary manslaughter and grand theft, while pleading not guilty to murder and aggravated robbery. Over the state's objection, the trial court accepted the guilty pleas, sentenced the defendant, and then dismissed the remaining charges on the ground that further prosecution would place the defendant twice in jeopardy for the same offense. The high court disagreed, noting: "No interest of [the defendant] protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. . . . [The defendant] has not been exposed to conviction on the charges [which were dismissed], nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. . . . There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws. [Citation.]" (*Id.* at pp. 501-502 [81 L.Ed.2d at p. 435].)

In *Swisher* v. *Brady* (1978) 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699], the United States Supreme Court considered a juvenile law procedure that permitted a case to be heard first by a master and then by a judge of the juvenile court. The high court held that the prescribed procedure did not violate the double jeopardy clause, because "an accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge." (*Id.* at p. 215 [57 L.Ed.2d at p. 714].) This holding was based upon the high court's conclusion that the challenged procedure "does not impinge on the purposes of the Double Jeopardy Clause," because it "does not provide the prosecution that forbidden 'second crack' " at supplying evidence it failed to produce in an earlier hearing, it did not enhance the risk that an innocent person would be convicted "by taking the question of guilt to a series of persons or groups empowered to make binding determinations," and it did not unfairly subject "the defendant to the embarrassment, expense, and ordeal of a second trial . . . ." (*Id.* at pp. 215-216 [57 L.Ed.2d at pp. 715-716].)

In the present case, none of the interests of defendant protected by the double jeopardy clause were impaired by the procedure that was followed. Defendant was not at risk, during trial of the current charges, that the jury would find true the prior conviction allegations, because at defendant's request the truth of those allegations had been bifurcated from the trial of the current charges. At the time the jury was discharged, " 'criminal proceedings against [defendant had] not run their full course.' " (*Justices of Boston Municipal Court* v. *Lydon* (1984) 466 U.S. 294, 308 [80 L.Ed.2d 311, 325,

104 S.Ct. 1805].) The evils against which the double jeopardy clause is directed were absent in the present situation. Moreover, dismissal of the prior conviction allegations would deny the People their right to a full and fair opportunity to prove the truth of the allegations. (Cf. *People v. Superior Court (Marks), supra,* 1 Cal.4th 56, 75-77.) We conclude that, because at defendant's request the determination of the truth of the alleged prior convictions had been bifurcated from trial of the current charges, defendant was not placed twice in jeopardy when the trial court, without objection by defendant, discharged the jury following the guilty verdict and, as necessitated by the bifurcation order, conducted further proceedings to determine the truth of the alleged prior convictions.

Defendant cites our decision in *Stone v. Superior Court* (1982) 31 Cal.3d 503, 516, fn. 7 [18 Cal.Rptr. 647, 646 P.2d 809], in which we referred to "the defendant's ' "valued right to have his trial completed by a particular tribunal." ' [Citations.]" But nothing in our opinion in *Stone* suggests that, in a bifurcated trial, the double jeopardy clause guarantees the defendant the right to have the truth of prior conviction allegations determined by the same jury that considers the current offenses. In *Stone,* we observed that the United States Supreme Court has employed the above quoted phrase to describe the aspect of double jeopardy protection that provides: "Once jeopardy has attached, discharge of the jury without a verdict is tantamount to an acquittal . . . ." (*Id.* at p. 516.)

In the present case, the jury that found defendant guilty of the current charged offense of burglary made no findings as to the alleged prior convictions, because those allegations had not been submitted to them. Thus, there can be no implication in the present case that the jury disbelieved the allegations of prior convictions and therefore implicitly found those allegations not true.

If defendant were correct that the double jeopardy clause required that the same jury that determines a defendant's guilt also must determine the truth of any alleged prior convictions, the various states would be prohibited from requiring that the truth of alleged prior convictions be determined by a new jury following discharge of the jury that returned a guilty verdict on the current charges. (See *Swisher v. Brady, supra,* 438 U.S. 204, 215-216 [57 L.Ed.2d at pp. 715-716].) But such a system would not contravene any principle embodied in the double jeopardy clause. That guarantee is designed to prevent an accused from being placed at risk more than once on a single charge; it is not concerned with whether, in a bifurcated trial, a single jury or multiple juries are utilized. Certainly, a state would not be prohibited by the double jeopardy clause from providing by statute that, following a guilty

verdict, a new jury should be impanelled to determine the truth of alleged prior convictions, or that the truth of such allegations should be determined by the court sitting without a jury. (See *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 93 [91 L.Ed.2d 67, 80-81, 106 S.Ct. 2411] ["[T]here is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact."]; *Spencer* v. *Texas* (1967) 385 U.S. 554, 560 [17 L.Ed.2d 606, 612, 87 S.Ct. 648] ["The states have always been given wide leeway in dividing responsibility between judge and jury in criminal cases."]; *U.S.* v. *Ruo* (11th Cir. 1991) 943 F.2d 1274, 1275 [Prior convictions need not be alleged in indictment or proved at trial for enhanced sentence under federal Armed Career Criminal Act.].)

In most instances, a defendant is benefitted by having a new jury determine the truth of alleged prior convictions, because the new jury will not have heard the evidence supporting the defendant's conviction of the current charges. In the present case, for instance, defendant, during his testimony at the trial of the current charges, had admitted suffering nearly all of the numerous alleged prior convictions.

Just as a procedure calling for the impanelling of a new jury to determine the truth of alleged prior convictions following the return of a guilty verdict in a bifurcated proceeding would not offend the double jeopardy clause, neither did the procedure employed in the present case. As we have explained, by failing to object, defendant forfeited his statutory right to have the jury that returned the guilty verdict determine the truth of the alleged prior convictions. The impanelling of another jury thus was permitted under California law. For the reasons discussed above, we conclude that this procedure did not place defendant twice in jeopardy.

Our analysis has centered upon the double jeopardy clause of the federal Constitution. Although in some contexts article I, section 15, of the California Constitution may provide a level of protection higher than that afforded by its federal counterpart (see, e.g., *People* v. *Superior Court (Marks)*, *supra*, 1 Cal.4th 56, 71, fn. 13; *Curry* v. *Superior Court*, *supra*, 2 Cal.3d 707, 712-713), nothing in the language or history of the state constitutional provision, or in past California decisions, suggests that, in the present context, the double jeopardy clause of the California Constitution should be interpreted differently from the corresponding clause of the federal Constitution. The same considerations, discussed above, that lead us to consider the double jeopardy clause of the federal Constitution inapplicable to the present situation cause us to conclude that the parallel provision in the California Constitution was not violated by the procedure followed by the trial court.

We hold that, because determination of the truth of the alleged prior convictions was bifurcated from the trial of the current charges, the court's

action in conducting further proceedings to determine the truth of those allegations, following discharge of the jury that returned the guilty verdict, did not violate the double jeopardy clause of either the United States Constitution or the California Constitution.[9]

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Arabian, J., and Baxter, J., concurred.

**MOSK, J.**—I dissent. Defendant was placed in jeopardy as to the underlying charges and the prior conviction allegations when the jury was sworn on March 7, 1990. When the jury was discharged on March 15, 1990, without deciding the issue of the truth of the prior conviction allegations, and without the consent of defendant or legal necessity, the prior conviction allegations could not be retried without offending the double jeopardy clauses of the state and federal Constitutions.

I also would find that it is not part of defendant's burden to object when the People fail to try him on a part of the information. In our adversary system, it is the People's burden to prove the charges, and it is not part of defendant's burden to help the People meet their responsibility.

### I

It is black letter law that "[o]nce jeopardy has attached, discharge of the jury without a verdict is tantamount to an acquittal and prevents a retrial, unless the defendant consented to the discharge or legal necessity required it." (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 516 [183 Cal.Rptr. 647, 646 P.2d 809]; *Arizona* v. *Washington* (1978) 434 U.S. 497, 503-505 [54 L.Ed.2d 717, 726-728, 98 S.Ct. 824].)

It is true that we should not engage in a purely mechanical analysis of when jeopardy attaches and terminates. The states have some freedom, as the majority opinion observes, in setting up procedures to separate or consolidate trial of charges in a criminal proceeding. (Maj. opn., *ante*, pp. 595-596.) But if under state law an allegation requires trial "with the hallmarks of the trial on guilt or innocence," that is, before a jury with precise fact-finding

---

[9]We disapprove the contrary holdings in *People* v. *Wojahn, supra*, 150 Cal.App.3d 1024, 1035; *People* v. *Hockersmith* (1990) 217 Cal.App.3d 968, 972 [266 Cal.Rptr. 380]; *People* v. *Dee* (1990) 222 Cal.App.3d 760, 765 [272 Cal.Rptr. 208]; and *People* v. *West* (1990) 224 Cal.App.3d 1283, 1287 [274 Cal.Rptr. 524].

duties to be carried out under a "beyond a reasonable doubt" standard in the same proceeding as the underlying criminal charges, then double jeopardy protections apply to trial of that allegation. (*Bullington* v. *Missouri* (1981) 451 U.S. 430, 438-439 [68 L.Ed.2d 270, 278-279, 101 S.Ct. 1852] [jeopardy attaches to life verdict in capital sentencing trial that bore hallmarks of trial on guilt or innocence]; see also *Arizona* v. *Rumsey* (1984) 467 U.S. 203, 209-211 [81 L.Ed.2d 164, 170-172, 104 S.Ct. 2305].)

We ourselves have said that jeopardy attaches to trial of sentence enhancement allegations when the jury is sworn to try the underlying offenses. (*People* v. *Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 78, fn. 22 [2 Cal.Rptr.2d 389, 820 P.2d 613].)

Moreover, Penal Code section 1025 requires that the prior conviction allegation be tried in a unitary proceeding by the same jury that tries the underlying charges. This interpretation is long established. (*People* v. *Kingsbury* (1945) 70 Cal.App.2d 128, 131 [160 P.2d 587]; see also *People* v. *Ysabel* (1938) 28 Cal.App.2d 259, 263-264 [82 P.2d 476].) The accusatory pleading must allege the charged prior conviction (*People* v. *Lo Cicero* (1969) 71 Cal.2d 1186, 1192 [80 Cal.Rptr. 913, 459 P.2d 241]; Pen. Code, § 969), the accused has the right to have the allegation tried by a jury, and the proof beyond a reasonable doubt standard applies. (*People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523].) State law contemplates, obviously, that jeopardy attaches to the trial of the prior conviction allegation when the jury that is to try both the underlying charges and the prior conviction allegations is sworn.

Trial of the underlying charges and the prior conviction allegations was bifurcated. This does not mean that jeopardy did not attach as to the prior conviction allegations when the jury was sworn. As the Court of Appeal in *People* v. *Wojahn* (1984) 150 Cal.App.3d 1024, 1033 [198 Cal.Rptr. 277], properly observed, bifurcation separates issues in a trial, but it does not, unlike severance, produce two causes to be heard in two separate trials. (*Id.* at p. 1033; accord, *People* v. *Givan* (1992) 4 Cal.App.4th 1107, 1114-1115 [6 Cal.Rptr.2d 339].) That bifurcation separates issues rather than proceedings is clear from the determination of the court in *People* v. *Givan, supra,* 4 Cal.App.4th 1107, that the assertion of the right of self-representation is untimely if made for the first time in a bifurcated trial when the jury takes up the issue of the prior conviction allegations.

Here, jeopardy attached to trial of the prior conviction allegations on March 7, 1990. The jury was discharged on March 15, 1990, without rendering a verdict on the allegations. There was no legal necessity for the

discharge of the jury, nor did defendant consent to the discharge without verdict at that time. It seems clear that retrial is barred.

The majority do not contend that jeopardy had not attached at the time the jury was sworn on March 7, 1990. Rather, they contend that jeopardy did not *terminate* when the jury was discharged. (Maj. opn, *ante*, p. 592.) In other words, jeopardy attached when the jury was sworn on March 7, 1990, continued after that jury was discharged without rendering a verdict on the allegations, and continued while another jury was selected, heard the case, and rendered its verdict.

For this novel view the majority draw an analogy to two cases decided by the United States Supreme Court. In one, at arraignment, long before jeopardy attached, defendant offered to plead guilty to a lesser offense and the court accepted the plea over the prosecutor's objection, and dismissed the remaining counts. The high court determined that there was no double jeopardy bar to trial on the dismissed counts, because defendant had never been subject to trial as to those counts. (*Ohio* v. *Johnson* (1984) 467 U.S. 493, 501-502 [81 L.Ed.2d 425, 434-435, 104 S.Ct. 2536].)

The proceeding here is not analogous. Unlike in *Ohio* v. *Johnson, supra,* 467 U.S. 493, here jeopardy did attach, a jury was selected and sworn, and defendant was on trial. "The reason for holding that jeopardy attaches when the jury is impaneled and sworn lies in the need to protect the interest of the accused in retaining a chosen jury." (*Crist* v. *Bretz* (1978) 437 U.S. 28, 35 [57 L.Ed.2d 24, 31, 98 S.Ct. 2156].) The defendant in *Ohio* v. *Johnson, supra,* 467 U.S. 493, pleaded guilty at the arraignment and so never had a jury to retain, and was never on trial. While the result in that case is not surprising, it offers no guidance in the present case.

The second case the majority offer is *Swisher* v. *Brady* (1978) 438 U.S. 204 [57 L.Ed.2d 705, 98 S.Ct. 2699], in which Maryland provided for a two-tier system of trial of juvenile offenses, in which the "accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge." (*Swisher* v. *Brady, supra,* 438 U.S. at p. 215 [57 L.Ed.2d at p. 715].) The court explained that the unitary proceeding did not subject the minor to two trials, nor could the state present additional evidence at the judicial hearing without the minor's consent. As it is only the judge who acts as final fact finder and adjudicator, the minor is not twice in jeopardy. (*Id.* at pp. 215-217 [57 L.Ed.2d at pp. 714-716].)

Again, the procedure at issue here is not analogous. We do not have a two-tier system with respect to trial of prior conviction allegations, we have

a unitary system. There is to be one trial, and we treat the prior conviction allegation as part of the trial on the underlying offenses, to be tried in one single proceeding. As state law does not contemplate a second proceeding before a new jury on the prior conviction allegation, it cannot be said that jeopardy does not terminate until such a second proceeding occurs.

Finally, the majority claim that no interest of defendant's that is protected by the double jeopardy clause is injured by the proceedings that occurred in this case. (Maj. opn, *ante*, p. 593.) Not so. One of the three main interests long recognized by the United States Supreme Court as protected by the double jeopardy clause is the interest in having the entire case tried before one tribunal. (*United States* v. *DiFrancesco* (1980) 449 U.S. 117, 128 [66 L.Ed.2d 328, 339-340, 101 S.Ct. 426]; *Crist* v. *Bretz, supra,* 437 U.S. at p. 35 [57 L.Ed.2d at p. 31]; *Arizona* v. *Washington, supra,* 434 U.S. at p. 503 [54 L.Ed.2d at p. 726].) Clearly, this interest was defeated in the present case.

The rule that jeopardy attaches when the jury is sworn or the court as trier of fact begins to hear evidence, is "by no means a mere technicality, nor is it a 'rigid, mechanical' rule. It is of course, like most legal rules, an attempt to impart content to an abstraction." (*Serfass* v. *United States* (1975) 420 U.S. 377, 391 [43 L.Ed.2d 265, 276, 95 S.Ct. 1055].) I would adhere to the rule to preserve the content of the double jeopardy clause.

## II

I also disagree with the decision that defendant waived any claim of error under Penal Code section 1025 by failing to object to the dismissal of the jury. (Maj. opn., *ante*, p. 589.)

The majority emphasize that defendant did not object to dismissal of the jury before trial on the remaining allegations. That is a strange requirement to place on the defendant. According to the majority he must, in effect, stand up and say, "Your Honor, I object to your dismissal of the jury because they have not heard all of the remaining charges and evidence against me."

Penal Code section 1025 makes the allegation of a prior conviction a matter of proof for the prosecutor, like any other charge in the indictment or information. The burden is on the prosecution to establish the valid prior conviction. The majority do not argue otherwise. Penal Code section 1164, subdivision (b), also clearly places on the trial court the obligation to assure itself that the prior conviction allegations have been dealt with before the jury is discharged. The prosecutor and the court, therefore, had the burden of assuring that the jury was not dismissed before trial of the prior conviction allegations.

**KENNARD, J.**—I dissent.

In this case, the trial court discharged the jury immediately after it returned a verdict of guilty but before the prosecution had presented evidence that defendant had suffered prior felony convictions, as alleged by the prosecution for purposes of sentence enhancement. The trial court excused the prosecution's failure to offer this evidence by convening another jury, over defendant's objection, and giving the prosecution a second chance to prove the enhancement. The majority approves this procedure on the ground that defendant "waived" the right to object by not raising the issue when the first jury was discharged.

By this holding, the majority turns an important rule of trial procedure on its head. Generally, each party is responsible for presenting its evidence at the appropriate time. If the defense forgets to call a witness to testify, and the prosecutor knows that the witness has been subpoenaed, the prosecutor is under no obligation to remind the defense about the witness, or to object before the defense rests its case. Yet the majority holds that when the *prosecutor* has neglected to present evidence in support of a prior conviction allegation that may result in a substantial increase in the defendant's sentence, the *defendant* must bring this neglect to the attention of the trial court.

As I shall explain, our statutory scheme imposes on the trial court the task of ensuring that the jury is not discharged before the prosecutor has an opportunity to offer evidence that the defendant has a prior conviction. It is the responsibility of the prosecution to see to it that the trial court gives it an opportunity to present this evidence. Never before has this court placed upon the defense the burden of curing the omissions of the court and the prosecutor, and we should not do so in this case. In addition, because the obligation imposed by the majority could not have been anticipated by the defense and is wholly unsupported by prior law, the majority's holding should be applied, if at all, prospectively only.

I.

A party forfeits a legal right by silence only when the law allocates to that party the legal duty or obligation to speak.[1] Our law expressly allocates to the trial court, not the defendant, the obligation to ensure that the jury is not

---

[1]This case, as analyzed by the majority, does not involve the forfeiture of a right by express consent (see e.g., *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633]) or by the intentional relinquishment or abandonment of a known right (see e.g., *Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357]). (See generally, *United States* v. *Olano* (1993) __ U.S. __, __ [123 L.Ed.2d 508, 518-521, 113 S.Ct. 1770] [distinguishing waiver and forfeiture]; *Freytag* v. *Commis-*

discharged before it has decided the truth of a prior conviction allegation. (Pen. Code, § 1164, subd. (b).) Because the obligation is placed on the trial court, defendant did not forfeit any legal right by failing to object when the trial court erred.[2]

Contrary to the sweeping assertions of the majority (maj. opn., *ante*, at pp. 589-590), a party's failure to object does not necessarily result in the forfeiture of a legal right, as the following examples illustrate.

For instance, when a trial court accepts a plea of guilty without first advising the defendant of the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers, as required by decisional law (see, e.g., *In re Tahl* (1969) 1 Cal.3d 122, 130-133 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Howard* (1992) 1 Cal.4th 1132, 1174-1175 [5 Cal.Rptr.2d 268, 824 P.2d 1315]), the Court of Appeal may reverse the judgment of conviction even if the defendant had not objected to the trial court's error at the time of the plea. A reversal may also be appropriate when the trial court fails to instruct *on its own motion* on the general principles of law relevant to the issues raised by the evidence. (See, e.g., *People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].) In either instance, the defendant's silence has not resulted in the forfeiture of any right because the duty to ensure proper advisement of rights and to instruct on the applicable principles of law is placed on the court, not the defendant.

Similarly, appellate review is not precluded, nor is a defendant's right to have the charges against him or her proved beyond a reasonable doubt forfeited, by the defendant's failure to object when the prosecution does not introduce sufficient evidence of an element of the offense charged. (See *Patterson* v. *New York* (1977) 432 U.S. 197, 210 [53 L.Ed.2d 281, 292, 97 S.Ct. 2319]; *People* v. *Kunkin* (1973) 9 Cal.3d 245, 249-250 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199].) Forfeiture does not occur in this situation because it is the prosecution, not the defendant, that bears the burden of proof.

And, as the majority acknowledges in this case, appellate review of a double jeopardy claim is not barred by defendant's failure to object on this

---

*sioner* (1991) 501 U.S. __, __, fn. 2 [115 L.Ed.2d 764, 789-790, 111 S.Ct. 2631, 2647] (conc. opn. of Scalia, J.) [same].)

[2]In my view, this court need not now resolve the constitutional double jeopardy issue because the decision in this case is governed by existing state statutory and decisional law. Therefore, I do not express an opinion on the appropriate final resolution of the double jeopardy issue. I do note, however, that if one accepts the majority's assumption that jeopardy attached to the alleged prior conviction allegation at the time the jury was sworn (maj. opn., *ante*, at p. 592), the majority's theory of "unterminated jeopardy" is, as Justice Mosk has shown in his dissenting opinion, clearly wrong.

ground at trial. (Maj. opn., *ante,* at p. 591.) The double jeopardy claim is not barred by the failure to object because "the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver." (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345]; accord, *People* v. *Superior Court (Marks)* (1991) 1 Cal.4th 56, 77 & fn. 20 [2 Cal.Rptr.2d 389, 820 P.2d 613].)[3]

As these examples illustrate, defendant's failure to act results in a forfeiture only if the law imposes on the defendant an obligation to act.[4]

Accordingly, to determine whether a party's failure to object results in the forfeiture of a right, the threshold inquiry is whether the law has allocated to that party the duty to object.

## II.

Penal Code section 1164, subdivision (b) expressly and unambiguously places *on the trial court* the obligations pertaining to the discharge of the jury in a case involving prior conviction allegations: "No jury shall be discharged until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it, *including,* but not limited to, the degree of the crime or crimes charged, and *the truth of any alleged prior conviction* whether in the same proceeding or in a bifurcated proceeding." (Italics added; see *People* v. *Bonillas* (1989) 48 Cal.3d 757, 772 [257 Cal.Rptr. 895, 771 P.2d 844] [duty of the trial court to review the form and substance of a jury verdict to ensure its propriety before discharging the jury]; *People* v. *Superior Court (Marks),* *supra,* 1 Cal.4th at p. 73, fn. 15 [emphasizing the importance of subdivision (b) of section 1164 as a safeguard against nonconforming verdicts, and urging strict compliance with statute].) Thus, the Legislature has specifically

---

[3]To support its position, the majority quotes this statement from *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]: " ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings *in connection with relief sought or defenses asserted,* where an objection could have been, but was not, presented . . . ." ' " (Maj. opn., *ante,* at pp. 589-590, italics added.) But the majority apparently fails to appreciate the significance of the qualifying italicized language. The party seeking relief or asserting a defense may by failing to object forfeit the right because the law allocates to that party the burden or obligation to act. (See *Leland* v. *Oregon* (1952) 343 U.S. 790, 795-796 [96 L.Ed. 1302, 1307-1308, 72 S.Ct. 1002].)

[4]The majority concedes that there are circumstances in which claims may be raised on appeal in the absence of a timely objection in the trial court. (Maj. opn., *ante,* at p. 591, fn. 7.) The majority, however, fails to state a principled legal basis for identifying the "circumstances" that may or may not require an objection. As I have shown, the relevant "circumstance" is whether the law has allocated the duty to speak to the party against whom the forfeiture is asserted.

allocated to the trial court, not the defendant, the responsibility for ensuring that the jury is not discharged before it has determined the truth of prior conviction allegations.

In holding that, by not objecting to the trial court's erroneous premature discharge of the jury, the defendant has forfeited the right to have the truth of the prior convictions determined by the *same* jury, the majority circumvents the statutory language imposing on the trial court the obligation not to prematurely discharge the jury.

## III.

In support of its conclusion that the defendant must object when, after the jury's verdict of guilt, the trial court erroneously discharges the jury before the prosecution has presented evidence of defendant's prior convictions, the majority gives three reasons. According to the majority, the Legislature did not intend to create a "procedural trap" allowing defense counsel to "ambush" the trial court. Also, in the majority's view, placing on the defendant the burden to object would protect the prosecution's statutory right to prove the prior convictions. Additionally, it would avoid placing a defense attorney "in the untenable position of having to choose between honoring counsel's commitment to the court (that jury trial on the prior conviction allegation would be waived) and counsel's duty to his or her client (to offer all available defenses to the charges and allegations contained in the accusatory pleading)." (Maj. opn., *ante*, at p. 591.) These assertions do not withstand analytical scrutiny.

For more than a century, California law has required that the *same* jury that determines a defendant's guilt or innocence on the charged offense make a special finding of the truth of any prior conviction alleged by the prosecutor. (Pen. Code, §§ 1025, 1158.) For nearly as long, it has been the law that when the jury fails to return a special verdict as to the truth of the prior conviction, the court must treat this as a finding "in favor of the defendant upon the question of [the] prior conviction[s]." (*People* v. *Eppinger* (1895) 109 Cal. 294, 298 [41 P. 1037]; accord, *In re McVickers* (1946) 29 Cal.2d 264, 271 [176 P.2d 40]; *People* v. *Morton* (1953) 41 Cal.2d 536, 543-544 [261 P.2d 523].) Here, the trial court was neither "procedurally trapped" nor "ambushed" by the defense. The trial court simply violated a clear and well-established legal rule that the court should not discharge the jury until it has determined the truth of any prior conviction allegations.

I now turn to the majority's assertion that placing on the defendant the burden to object would safeguard the prosecution's statutory right to prove a

prior felony conviction. Because it is the prosecution that seeks the imposition of the prior felony conviction enhancement and has the burden of proving the truth of the prior conviction allegation, the prosecution, not the defense, is at least partially responsible for the erroneous premature discharge of the jury by its failure to bring the error to the trial court's attention. Our recent decision in *People* v. *Superior Court* (*Marks*), *supra,* 1 Cal.4th 56, 77, is instructive. In *Marks,* the jury's verdict failed to specify the degree of murder, contrary to the mandate of Penal Code section 1157. By operation of law, the verdict became fixed at second degree murder. (Pen. Code, § 1157.) We rejected the prosecution's contention that the application of Penal Code section 1157 deprived the prosecution of its one complete opportunity to convict. We said: "We perceive no unfairness to the People in our holding. The prosecution is not deprived of its 'one complete opportunity to convict those who have violated [the] laws.' [Citations.] When the verdict is 'deemed of the lesser degree' by operation of law, the prosecution bears at least partial responsibility. The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court's attention before it discharges the panel. (See §§ 1161-1164.) Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People's right to due process is accordingly not offended. [Citations.] [¶] The United States Supreme Court has repeatedly counseled against subjecting a defendant to further proceedings to allow the prosecution the opportunity to ameliorate trial deficiencies, evidentiary or procedural, that could have been otherwise timely corrected. [Citations.]" (*People* v. *Superior Court* (*Marks*), *supra,* 1 Cal.4th at p. 77, fns. omitted.) This court's reasoning in *Marks* applies with equal force here.

Here, as in *People* v. *Superior Court* (*Marks*), *supra,* 1 Cal.4th at page 77, the failure of the defense to object to the trial court's premature discharge of the jury did not deprive the prosecution of its one complete opportunity to prove one or more alleged prior convictions. As in *Marks,* there was nothing to prevent the prosecution in this case from "calling the problem to the court's attention before the court discharge[d] the panel," and the prosecution's failure to do so "result[ed] from neglect rather than lack of notice and opportunity to be heard." As in *Marks,* defendant should not have been subjected "to further proceedings to allow the prosecution the opportunity to ameliorate trial deficiencies . . . that could have been timely corrected." I perceive no reason not to follow *Marks* in this case.

Finally, the majority asserts that not allocating to the defendant the burden of making a timely objection would place the defense attorney in the untenable position of having to choose between counsel's "commitment to the court" that jury trial on the prior conviction allegation may subsequently

be waived and counsel's duty to zealously represent the defendant. (Maj. opn., *ante*, at p. 591.) This assertion confuses the roles of the respective parties in a judicial proceeding.

The error in this case—the trial court's discharge of the jury before the prosecution presented evidence of defendant's prior convictions—was committed by the trial court and was abetted by the neglect of the prosecution when it failed to bring the error to the trial court's attention. In a criminal trial, the defense attorney's obligation is to diligently and conscientiously act as an advocate for the defendant (see, e.g., *In re Cordero* (1988) 46 Cal.3d 161, 180 [249 Cal.Rptr. 342, 756 P.2d 1370]), not to perform any obligations incumbent on the trial court or to ameliorate the prosecution's deficiencies at trial. It is the task of the prosecution to allege the prior conviction in the accusatory pleading (Pen. Code, § 969) and to prove its truth beyond a reasonable doubt (*People* v. *Morton, supra*, 41 Cal.2d at p. 539). Thus, in this case, any duty to object should be imposed on the prosecution, not the defense. To hold, as the majority does, that defense counsel must interpose an objection that could result in substantial detriment to the client, and that could not advance the client's interests, is inconsistent with counsel's responsibilities, is anathema to our adversarial system, and is contrary to the allocation of the duties and obligations of the participants in our judicial system.

As we have seen, the majority reallocates the obligations of the respective participants at trial contrary to well-established law. It also applies its ruling retroactively without any discussion of the propriety of doing so. If this court is going to impose a new duty on the defense, it should do so prospectively only.

## IV.

In addition to disagreeing with the majority on the objection issue, I disagree that its holding should be given retroactive application.

An objection and waiver rule such as the new rule promulgated by the majority may not be applied retroactively when existing law did not require an objection. In a decision filed only a few weeks ago, this court held that a defendant's failure to challenge the reasonableness of a probation condition constituted a waiver of the claim on appeal. As we pointed out: "Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or *wholly unsupported by substantive law then in existence. (People* v. *Turner* (1990) 50 Cal.3d 668, 703 [268 Cal.Rptr. 706, 789 P.2d 887]; *People* v. *Ogunmola* (1985) 39 Cal.3d 120,

123, fn. 4 [215 Cal.Rptr. 855, 701 P.2d 1173]; *In re Gladys R.* (1970) 1 Cal.3d 855, 861 [83 Cal.Rptr. 671, 464 P.2d 127].) By the same token, defendant should not be penalized for failing to object where existing law overwhelmingly said no such objection was required." (*People v. Welch* (1993) 5 Cal.4th 228, 237-238 [19 Cal.Rptr.2d 520, 851 P.2d 802], italics added, fn. omitted)

To say that the objection requirement imposed by the majority in this case was "wholly unsupported by substantive law then in existence" is an understatement. Our law, underscored by a consistent pattern of actions by this court, did not previously impose such an obligation.

In 1984, the Court of Appeal's decision in *People v. Wojahn* (1984) 150 Cal.App.3d 1024 [198 Cal.Rptr. 277] addressed a trial court's premature discharge of a jury. In *Wojahn*, the jury was mistakenly discharged, without an objection, before any evidence of the truth of the prior conviction was offered. (*Id.* at p. 1032.) Three weeks later, on a motion of the prosecution and over the objection of the defense, a new proceeding was instituted and the prior conviction allegation was found to be true. (*Ibid.*) On appeal, the *Wojahn* court held that the constitutional protection against being twice placed in jeopardy for the same offense required the striking of the prior conviction allegation. (*Id.* at pp. 1032-1035.) This court denied review of the *Wojahn* decision on March 21, 1984. Thereafter, this court consistently endorsed the *Wojahn* holding by denying review of Courts of Appeal decisions that followed *Wojahn*, while ordering the depublication of those decisions that were contrary to *Wojahn*.

For example, in 1989, the Courts of Appeal issued decisions contrary to *Wojahn* in *People v. Laury* (Cal.App.) A043042 and *People v. Casillas* (Cal.App.) A043679. This court denied review in *Laury* in July 1989; as to *Casillas*, a petition for review was never filed with this court. Then, in 1990, a Court of Appeal decided *People v. Hockersmith* (1990) 217 Cal.App.3d 968 [266 Cal.Rptr. 380]. The decision in *Hockersmith* adhered to the *Wojahn* holding and criticized the decisions in both *Laury* and *Casillas*. (217 Cal.App.3d at pp. 973-975.) On April 26, 1990, this court denied the petition for review in *Hockersmith*, but ordered the decisions in both *Laury* and *Casillas* depublished.

As the First District Court of Appeal in *People v. Dee* (1990) 222 Cal.App.3d 760 [272 Cal.Rptr. 208] observed: "The Supreme Court denied a petition for review in *Laury* on July 20, 1989. There was no petition for review in *Casillas*, which therefore became final on January 16, 1990. A petition for review in *Hockersmith* was filed on March 6, 1990. Then, at one

fell swoop on April 26, 1990, the Supreme Court denied review in *Hockersmith* and depublished both *Casillas* and *Laury*, which had long since become final and were not even before the court. This leaves *Hockersmith* as the only published post-*Wojahn* opinion. [¶] The message from the Supreme Court is obvious: *Hockersmith* and *Wojahn* were correct, and *Laury* and the plurality in *Casillas* were wrong. There is no other fathomable reason for the Supreme Court's action." (222 Cal.App.3d at p. 763.) Thus, by its actions, this court affirmed the continued viability of *Wojahn*, including the absence of any requirement of a defense objection.

The majority seeks to evade the import of the Courts of Appeal's decisions and this court's actions on two grounds. First, the majority asserts that this court's denial of review in some cases and depublication of other cases do not express this court's view on the merits of those decisions. Second, the majority claims that because no case has expressly stated that a defendant may argue on appeal that the trial court violated Penal Code section 1025 after failing to object when the jury was discharged, it is justified in imposing a previously nonexistent obligation retroactively. (Maj. opn., *ante*, at p. 592, fn. 8.) The majority is wrong.

This court's denials of review and orders of depublication in numerous cases following the decision in *People* v. *Wojahn, supra,* 150 Cal.App.3d 1024, cannot simply be dismissed as meaningless. As the court stated in *People* v. *Dee, supra,* 222 Cal.App.3d at pages 764-765: "We also recognize that, effective July 1, 1990, new rule 979(e) of the California Rules of Court provides that a depublication order 'shall not be deemed an expression of opinion of the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion.' Because the depublication orders in *Laury* and *Casillas* predate rule 979(e), we conclude the new rule does not apply to those orders. We note, however, that given the manner in which the Supreme Court has dealt with the three post-*Wojahn* cases, to insist that those depublication orders are without significance would be to perpetuate a myth."

The majority's second claim—that full retroactivity of its decision is justified because no case has expressly stated that the defendant does not have a duty to object to preserve the Penal Code section 1025 right—is also incorrect. Only a defense attorney with extrasensory powers could have predicted that this court would impose an obligation to object to the trial court's premature discharge of the jury. Such an objection is directly contrary to the interest of counsel's client, the defendant. In addition, it is unreasonable to expect defense counsel to understand our prior law as requiring, based on identical facts, an objection on statutory grounds but not

double jeopardy grounds. A conscientious attorney researching the issue or carefully tracking the development of the law in this area would have concluded, based on the overwhelming authority, not only that an objection was not required, but also that the making of such an objection could constitute ineffective assistance of counsel. If, as it has done here, this court is going to ignore the statutes and prior decisional law, it should at least follow the rules of prospectivity it has established.

## V.

In this case the majority imposes a forfeiture of defendant's statutory right to a determination of the truth of prior conviction allegations by the same jury that determined guilt or innocence on the charged offense even though defendant had no legal duty or obligation to speak. In doing so, the majority places on defendant an obligation that the Legislature has expressly placed on the trial court, and relieves the prosecution from the consequences of its neglect. The majority's conclusion is contrary to both statutory and decisional law, and the retroactive application of its holding is fundamentally unfair.

I would amend the judgment by striking the prior conviction sentence enhancements and affirm the judgment as so amended.

Appellant's petition for a rehearing was denied September 16, 1993. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.