Filed 7/29/13  In re L.G. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| In re L.G. et al., Persons Coming Under the Juvenile Court Law. | B244194<br><br>(Los Angeles County<br> Sup. Ct. No. CK92174) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>S.G.,<br><br>     Defendant and Appellant. |  |

Appeal from orders of the Superior Court of Los Angeles County.  Marilyn Mordetzky, Juvenile Court Referee.  Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jessica S. Mitchell, Senior Associate County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant S.G. (father) appeals from the juvenile court's jurisdiction and disposition orders adjudging father's three minor children with C.B. (mother) to be dependents of the court and removing them from parental custody. Father challenges only one of the jurisdictional findings, namely the allegation pursuant to Welfare and Institutions Code section 300, subdivision (b), regarding storage of his medical marihuana.[1] Father contends there is no substantial evidence supporting the determination he improperly stored his medical marijuana in a manner accessible to the children. Father also challenges that portion of the dispositional orders directing him to participate in random drug testing.

Father's arguments are unavailing. Father's jurisdictional challenge is nonjusticiable because the court declared the three children dependents of the court based on multiple findings concerning both mother's and father's conduct, such that jurisdiction over the children would remain proper even without the challenged allegations. Further, we find no exceptional circumstances warrant our discretionary review. Father forfeited his challenge to the dispositional order by expressly consenting to participate in drug testing. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, the Los Angeles County Department of Children and Family Services received a referral on the Child Protection Hotline that three minor children, L.G., M.G., and U.G. (the children), were at risk of harm in mother's home because mother regularly suffers from epileptic seizures, was abusing methamphetamine, and was allowing her then-boyfriend, who was a reported drug dealer and had threatened to kill mother in front of the children, to live in the home.

A social worker from the Department visited mother's home on April 11, 2012. On arrival, the social worker noted mother appeared to be in pain and walked very

---

[1]     All further undesignated section references are to the Welfare and Institutions Code.

slowly. Mother later explained she had hurt her back the previous Saturday during an argument with father in which he pushed her against the bathroom vanity.

The social worker inspected the home and interviewed mother, as well as a female friend who was visiting at the time, and "Sean N.," mother's boyfriend. The social worker also spoke to L.G. and U.G., with mother's permission.

According to mother, she and father had "broken up," and he was not living in the home with them, but was living at his mother's home. Mother informed the social worker that, pursuant to a family law order, the children stayed with father on certain weekends each month at the paternal grandmother's home.

The next day, the social worker contacted father and visited the home of the paternal grandmother. The home was inspected and father and the paternal grandmother were interviewed. M.G. was with father at the time because mother said he had "flipped out" and would not go to school. With father's permission, the social worker interviewed M.G. Father explained he uses medical marijuana and agreed to take a drug test. The social worker requested a copy of his medical marijuana card.

After the initial investigation, the social worker learned that mother's boyfriend, Sean N., was no longer living, or welcome, in the home and, according to mother, was in jail. The social worker also noted there had been previous referrals to the Department regarding the children for physical and emotional abuse, and for general neglect, all of which were resolved as either inconclusive or unfounded.

At the end of April, mother reported to the social worker she was trying to work things out with father. The family agreed to meet at the Department's Lancaster office to discuss options for the children to remain in parental custody while the parents received services. The meeting ended with mother and father each blaming the other for the problems and refusing to compromise on a disposition in the best interests of the children. The children were detained and placed together in a foster home.

Father and mother, who have been together on and off since mother was 15, have a tumultuous history. They regularly have heated verbal arguments, some of which lead to physical altercations. During one such argument in 1997, father pushed mother,

3

causing her to fall and hit her head, requiring 27 stitches near her eyebrow and leaving a permanent scar. Father concedes he went to prison for two years as a result of this incident.

In June 2011, father was again arrested following another fight with mother in which father hit mother and wrapped a telephone cord around her neck, trying to choke her. Mother escaped out a window with L.G. and U.G. Father was arrested and mother obtained a restraining order against him. Father was released from jail in December 2011 after mother refused to testify against him, and they once again attempted to reconcile.

As for the April 2012 incident in which mother injured her back, father denied pushing her into the bathroom vanity. He claimed he was trying to persuade mother to go to a drug rehab program, and when he tried to hug her, she pushed away from him and fell against the bathroom countertop. However, mother said they were having an argument about visitation and father grabbed her, causing her to fall back against the vanity, but he "acted like" he was just trying to give her hug when he thought the children saw what happened.

The children reported witnessing many of these domestic violence incidents. L.G., the eldest daughter, reported that mother and father argued, that she had seen both parents hit each other, and mother often threw things at father. M.G. and U.G. both said their parents argued "a lot." M.G. noted mother regularly called father bad names. U.G. recalled seeing father and mother pushing each other and yelling, and said that one time father was sitting on mother and L.G. had to tell him to stop because he was "choking" mother.

Both parents have criminal records. Mother's record includes convictions for driving under the influence and burglary. Mother was sentenced to two years in prison on the burglary charge, during which time father took care of the children. Despite initially denying any drug problem, mother acknowledged her need for treatment for her continued abuse of illegal drugs, specifically methamphetamine. In April 2012, mother tested positive for methamphetamine. In June 2012, mother twice tested positive for methamphetamine.

4

Father's criminal history dates back to 1993 and includes numerous arrests for robbery and burglary. Father was convicted in 1993 for taking a vehicle without the owner's consent. In 1997, he was convicted of robbery and infliction of corporal injury on a cohabitant for the incident resulting in mother's head injury. In 2005, father was convicted of possession of a controlled substance, and participated in a Proposition 36 drug treatment plan with probation. In 2006, father was convicted of petty theft. And, in 2011, father was arrested for violating the domestic violence restraining order in favor of mother.

At the jurisdiction hearing, both mother and father testified. Mother testified to the history of arguments and the numerous incidents of domestic violence. Mother admitted she regularly used methamphetamine, including during April 2012 at the time of the referral to the Department. According to mother, father smoked marijuana at the house, but not in front of the children, and father had smoked "sherm"[2] with their friend "Shane" in the garage of her home as recently as April 2012.

Father admitted he and mother argue, and conceded his conviction for domestic violence in 1997. However, he testified charges of domestic violence against him by mother in 2003 were "dropped." Father denied assaulting mother during the 2003 and 2011 incidents.

Father denied using any illegal drugs, explaining he has had a medical marijuana prescription card for three years which he obtained for pain management arising from injuries suffered in a car accident. Father prefers to use marijuana edibles, like brownies, candy and lollipops. Depending on his level of pain, he uses the edibles anywhere from two times a week up to two times per day. Father testified his marijuana use does not interfere with his ability to protect and supervise his children when they are in his care.

Father admitted he has eaten his marijuana edibles in front of the children. He explained if he was eating a marijuana sucker, and the children asked about it, he would

_____

[2] The parties agree the term "sherm" refers to marijuana dipped in PCP.

5

tell the children they could not have one of his, but he would try to have something else, some other candy, for them to eat instead. He testified he ordinarily kept his marijuana in the trunk of his car or on a shelf in his closet, but he recently obtained a lock box at the request of the social worker to prevent the children from having access to the drugs.

Patricia Woods, a Department social worker, testified and expressed the Department's concern over father's storage of his medical marijuana and his use of the edibles in the children's presence. Ms. Woods explained father had to be told to keep the marijuana in a locked container for the safety of the children.

After argument from counsel, the court took the matter under submission. At the return hearing on July 17, 2012, the court sustained the petition, as amended, pursuant to section 300, subdivision (a) (count 1), and subdivision (b) (counts 1, 2, 3, 5 & 8). The remaining allegations were dismissed. The court ordered separate monitored visitation for both parents, granting the Department discretion to liberalize the parents' visitation schedule to include unmonitored and overnight visits. This appeal followed.

## DISCUSSION

1. **Father's Challenge to the Jurisdictional Finding Pursuant to Section 300, Subdivision (b) Is Not Justiciable**

Father contends there is no substantial evidence supporting the allegation that the children were at substantial risk of harm because he improperly stored his medical marijuana. (§ 300, subd. (b).) Father acknowledges the court can take jurisdiction over a minor based on the conduct of either parent, and that reversal of the section 300, subdivision (b) finding on count 2 would not divest the juvenile court of jurisdiction. However, father contends this court should consider his appeal on the merits because the jurisdictional finding regarding the storage of his marijuana could impact future proceedings. We are not persuaded.

The focus of dependency proceedings is on the protection of minor children. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) To acquire jurisdiction over a child, a juvenile court need only "find that one parent's conduct has created circumstances triggering section 300." (*Ibid.*) "[I]t is commonly said that a jurisdictional finding

6

involving one parent is "'good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent.'" [Citation.]" (*Id.* at p. 1492.) As a result, "an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*Ibid*.)

Here, father did not contest the multiple jurisdictional findings as to mother, nor did he challenge the other jurisdictional findings concerning his own behavior pursuant to section 300, subdivision (a) (count 1--domestic violence) and subdivision (b) (count 3--domestic violence), or pursuant to section 300, subdivision (b) (count 5--criminal history). Because these other jurisdictional bases remain in effect and unchallenged, father's appeal of the one jurisdictional finding pursuant to section 300, subdivision (b) is nonjusticiable. (*In re I.A.*, *supra*, 201 Cal.App.4th at p. 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].)

Furthermore, father has failed to persuade us there is a valid reason to exercise our discretion to review his contention. Father has not identified any likely prejudice he will suffer in future proceedings because of the jurisdictional finding regarding the improper storage of his medical marijuana. And, in any event, the record reflects substantial evidence of the jurisdictional bases found true as against both mother and father. As for the finding regarding father's improper storage of marijuana in the home, the court reasonably could infer from the record there was a substantial risk of harm to the children arising from access to marijuana in edible forms (brownies, candy) likely to be seen as particularly tempting to children of their age. (See *In re Rocco M*. (1991) 1 Cal.App.4th 814, 825-826 [juvenile court entitled to infer that child 11 years of age is subjected to substantial risk of harm when placed in a home environment allowing access to drugs].)

**2.     Father Forfeited any Challenge to the Order Requiring Him to Participate in Drug Testing**

It is a fundamental principle of appellate jurisprudence that issues not timely preserved below by way of objection will be deemed forfeited.  (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590.)  The purpose behind this rule is "to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962.)  The forfeiture rule applies in dependency matters.  (*In re Dakota S*. (2000) 85 Cal.App.4th 494, 502.)

Notwithstanding the foregoing, an appellate court does have the right to excuse a forfeiture in appropriate circumstances.  This discretion "should be exercised *rarely* and only in cases presenting an important legal issue.  [Citations.]  Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be *exercised with special care* in such matters.  'Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.'  [Citation.]  Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance.  (§ 366.26.)"  (*In re S.B*., *supra*, 32 Cal.4th at p. 1293, italics added.)

Here, not only did father *not* object to the random drug testing ordered by the court, but father *expressly agreed* to such testing.  Just before the court made its oral pronouncement on disposition, counsel for father reiterated a general objection to the removal order, but then raised only an objection to the proposed disposition plan requiring monitored visitation.  Counsel then stated, "my client is in counseling.  He's willing to drug test . . . ."  The court ordered father to attend a Department-approved program of random and on-demand drug testing to verify that his marijuana usage is limited to his medical prescription for pain management.  Father's counsel then asked for transportation assistance, which the court granted.  The court asked if there was anything

8

else counsel wished to address as to father. Counsel said, "I don't believe so at this time."

On this record, father cannot now be heard to claim on appeal the juvenile court abused its discretion in ordering him to participate in drug testing. Moreover, the record reflects a sound basis for the court's concern given father's prior history of drug use, his prior conviction for possession of a controlled substance, as well as mother's testimony that father recently used illegal drugs (sherm) at the home.

## DISPOSITION

The jurisdiction and disposition orders are affirmed.


GRIMES, J.


We concur:


RUBIN, Acting P. J.


FLIER, J.

9