Filed 10/1/14  DiMacali v. People CA4/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| RANDOLPH DIMACALI, | D065255 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. MCR13263, SCE212080) |
| THE PEOPLE, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy Public Defender, Vic Eriksen and Matt Braner, Deputy Public Defenders, for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Seth M. Friedman, Deputy Attorneys General, for Defendant and Respondent.

Randolph Dimacali pleaded guilty to two counts of oral copulation with a minor. The court sentenced him to supervised probation, subject to 365 days of local

incarceration. It also imposed a mandatory requirement to register as a sex offender for life under Penal Code[1] section 290. Years later, Dimacali filed a petition for writ of mandate seeking relief from the mandatory registration requirement. The court agreed that, under *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*), Dimacali was not subject to mandatory registration. However, pursuant to its discretionary powers under section 290.006, the court ruled Dimacali should still register as a sex offender for life.

On appeal, Dimacali contends that: (1) postconviction discretionary registration violates the Sixth Amendment, (2) the court exceeded its jurisdiction by imposing the discretionary registration requirement after Dimacali completed probation, (3) the court did not comply with the two-step *Hofsheier* inquiry, and (4) the court improperly ignored material evidence submitted to it. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

In the late 1990s, Randolph Dimacali, then in his 30's, committed a series of improper sexual acts with multiple teenage boys. He took advantage of his position as a water polo coach to gain access to his victims, whom he lured with drugs and alcohol. John Doe 1 was a member of Dimacali's water polo team. Dimacali orally copulated him on two occasions between October 1996 and March 1997, when Doe 1 was 16 years old.

On the first occasion, Dimacali asked Doe 1 to help him clean at an El Cajon dentist's office where Dimacali worked as a part-time janitor. Dimacali offered Doe 1 some marijuana and, after they smoked, offered to massage Doe 1's injured shoulder.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

Dimacali rubbed Doe 1's shoulder, worked his way down Doe 1's back, and eventually pushed down Doe 1's shorts so he could massage his buttocks. Next, Dimacali removed Doe 1's shorts and asked Doe 1 to roll over. Dimacali then orally copulated Doe 1 until Doe 1 excused himself and left.

On the second occasion, three to four months later, Doe 1 stopped by Dimacali's home intending to drop something off. Dimacali offered Doe 1 both marijuana and beer. After smoking and drinking, Doe 1 helped carry some papers upstairs to Dimacali's office. Dimacali led Doe 1 into his bedroom to watch television before trying to seduce Doe 1, attempting to kiss him and apparently dismissing Doe 1's repeated efforts to excuse himself. Dimacali then orally copulated Doe 1. Following these two incidents, Dimacali continued to proposition Doe 1.

Like John Doe 1, John Doe 2 was a member of Dimacali's water polo team. In January 1997, when Doe 2 was 14 years old, Dimacali invited Doe 2 and two other team members to spend the night at Dimacali's home before the group went surfing the next day. Dimacali provided both marijuana and alcohol. The group drank excessively and, at one point, Dimacali turned on a pornographic television channel. At the end of the night, Dimacali asked Doe 2 to sleep upstairs in his bed. Dimacali claimed he wanted to keep an eye on Doe 2, as it was his first time consuming so much alcohol. The other boys slept downstairs.

When Doe 2 got in the bed, Dimacali again turned on the pornographic television channel. He rubbed Doe 2's shoulders, worked his way down Doe 2's back and eventually began to massage Doe 2's buttocks. Dimacali then pushed down Doe 2's

3

shorts, rolled Doe 2 on to his back, manually masturbated him, and briefly orally copulated him.

From 1992 to 1996, when John Doe 3 was between 10 and 14 years old, Dimacali lived with Doe 3 and his family. Doe 3 disliked living with him, because Dimacali tended to enter the bathroom while Doe 3 was showering, usually under the pretense that he had to discuss something important.

After Dimacali moved out, Doe 3 went to Dimacali's house to pick up water polo equipment. Doe 3 sat on the floor to watch television. Dimacali sat on the bed behind him, turned on a pornographic movie, and asked Doe 3 if he wanted to masturbate. Doe 3 declined and Dimacali responded, "Well, I'm going to." Doe 3 was afraid to look, but he strongly believed Dimacali then masturbated behind him.

Police arrested Dimacali on March 22, 2001. Pursuant to a plea agreement, Dimacali pleaded guilty to one count of violating section 288a, subdivision (b)(1) (oral copulation with a person under 18) and one count of violating section 288a, subdivision (b)(2) (oral copulation by a person over 21 with a person under 16). The court sentenced Dimacali to five years of supervised probation, subject to 365 days of local incarceration, and a mandatory requirement for violation of section 288a that he register as a sex offender for life under section 290.

In June 2013, Dimacali filed a petition for writ of mandamus requesting relief under *Hofsheier* from the mandatory sex offender registration requirement. In September 2013, the court found the section 290 mandatory registration requirement unconstitutional. The court ordered an evidentiary hearing to determine whether

4

Dimacali should nonetheless register under section 290.006.  In December 2013, the court denied Dimacali's petition and ordered discretionary registration for life.

DISCUSSION

I

*Standards of Review*

We apply two standards of review:  de novo and abuse of discretion.  When an appeal raises pure questions of law, not involving the resolution of disputed facts, the reviewing court exercises independent judgment or de novo review, which gives no deference to the trial court's ruling.  (*People v. Bergen* (2008) 166 Cal.App.4th 161, 167.) Dimacali's first two contentions on appeal concern the Sixth Amendment and the court's jurisdiction to impose a discretionary registration requirement.  These contentions raise pure questions of law and thus are governed by a de novo standard of review. When a trial court has discretionary power to decide an issue, however, the reviewing court must apply the abuse of discretion standard.  (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)  This standard is deferential, "[b]ut it is not empty."  (*People v. Williams* (1998) 17 Cal.4th 148, 162.)  "[I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts."  (*Ibid.*, quoting *People v. DeSantis* (1992) 2 Cal.4th 1198, 1226.)  Dimacali's third and fourth contentions challenge the court's exercise of its discretionary powers.  The abuse of discretion standard applies to these contentions.

II

*Sex Offender Registration as a Nonpunitive, Regulatory Measure*

Dimacali contends the court's postconviction imposition of a registration requirement constitutes an increased penalty or enhanced punishment in contravention of the Sixth Amendment to the United States Constitution.

In 2000, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) In 2006, our Supreme Court ruled the section 290 mandatory lifetime registration requirement for persons convicted of violating section 288a, subdivision (b)(1), was unconstitutional. (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1197, 1206-1207.) It held that equal protection principles precluded a mandatory lifetime registration requirement for those convicted of oral copulation with a minor when there was no such mandatory requirement for those convicted under section 261.5 of sexual intercourse with a minor. (*Hofsheier,* at pp. 1206-1207.)

The *Hofsheier* court remanded the matter to the trial court to determine whether the defendant fell within the discretionary registration category described in what is now section 290.006, which provides in part: "Any person ordered by any court to register . . . shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290.006; *Hofsheier*, *supra*, 37 Cal.4th at p. 1209.)

6

The court expressly declared, "the trial court may, in its discretion, order defendant to register as a sex offender under that provision." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1209.)

Four years later, our Supreme Court addressed the proper procedural vehicle for those possibly entitled to *Hofsheier* relief. (*People v. Picklesimer* (2010) 48 Cal.4th 330 (*Picklesimer*).) The court concluded, "for those . . . no longer in custody and whose appeals are final, claims for *Hofsheier* relief . . . must be brought by way of a petition for writ of mandate in the trial court." (*Id.* at p. 335.)

The *Picklesimer* court then considered the exact issue raised by Dimacali here, namely whether the section 290.006 discretionary registration requirement "permits imposition of heightened punishment based on findings of fact by a trial court rather than a jury, in violation of *Apprendi* . . . ." (*Picklesimer*, *supra*, 48 Cal.4th at p. 343.) The court flatly rejected this claim, emphasizing that because sex offender registration is not punishment, *Apprendi* "has no application here." (*Picklesimer,* at pp. 343-344.)

As did the defendant in *Picklesimer*, Dimacali argues the postconviction registration requirement constitutes an increased penalty in violation of the Sixth Amendment. Like our Supreme Court in *Picklesimer*, we conclude *Apprendi* has no application here. Dimacali attempts to differentiate his case from *Picklesimer* by alleging "things have changed dramatically for those who are required to register as sex offenders." However, Dimacali's argument falls short as, curiously, he points only to sections 290.46, "Megan's Law" of 2004, and 3003.5, subdivision (b), "Jessica's Law" of 2006, as evidence of the supposed "dramatic change," both of which existed at the time *Picklesimer* was decided in 2010. This court is bound to follow *Picklesimer*. (*See Auto*

7

*Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction."].)

### III

*Jurisdiction to Impose a Postconviction Registration Requirement*

Dimacali next contends the court exceeded its jurisdiction in violation of Dimacali's due process rights when it imposed the discretionary registration requirement after Dimacali's probation term had expired.

A. *Forfeiture*

Because Dimacali did not raise this issue in the trial court, he arguably cannot raise it now. " ' "[A]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court . . . ." ' " (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590; *People v. Leonard* (2014) 228 Cal.App.4th 465, 481.) We conclude this issue is forfeited. (*Leonard,* at p. 481.) Even if we reach the merits, however, we conclude the contention is unavailing.

B. *The Proper Procedural Method Under Picklesimer*

A petition for writ of mandate is "the appropriate vehicle for seeking *Hofsheier* relief . . . ." (*Picklesimer*, *supra*, 48 Cal.4th at p. 339.) In fact, it "is an independent proceeding that vests the trial court with jurisdiction to act," and to "resolve any legal or factual issues, via an evidentiary hearing if need be." (*Id.* at pp. 339, 340.)

In *Picklesimer*, our Supreme Court recognized the trial court would be empowered, by way of a petition for writ of mandate, to determine whether a defendant should be required to register under section 290.006. (*Picklesimer*, *supra*, 48 Cal.4th at p. 342.) This was true even though the defendant in *Picklesimer*, like Dimacali, had completed his sentence and was no longer subject to probation or parole. (See *id.* at p. 336.)

Dimacali acknowledges that *Picklesimer* directly conflicts with his position. He nonetheless contends a *Hofsheier* petitioner who has successfully complied with his or her probationary terms should be immune from postconviction discretionary registration. But "in cases where mandatory sex offender registration has been shown to violate equal protection, the procedure that most closely matches the legislative intent is not automatic removal of a sex offender from the state sex offender registry, but an after-the-fact discretionary determination whether removal is appropriate." (*Picklesimer, supra*, 48 Cal.4th at p. 343, fn. omitted.) We conclude the court acted within its jurisdiction when it found Dimacali was not immune from postconviction discretionary registration.

IV

*The Two-step Hofsheier Inquiry*

Dimacali next contends the court abused its discretion under section 290.006 because it misapplied the two-step *Hofsheier* inquiry.

*Hofsheier* explained that, to implement discretionary registration under section 290.006, "the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual

9

gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender." (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197.) *Hofsheier* further explained section 290.006 "gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*Ibid.*)

Dimacali concedes "the trial court made the correct finding on the first step," as the offense was committed "for a purpose of sexual gratification . . . ." He contends, however, that the court should have more fully considered the distinction between sexual compulsion and sexual gratification because sexual gratification allegedly is substantially less dangerous than sexual compulsion and thus allegedly weighs more heavily against imposition of a registration requirement. Dimacali cites no authority in support of this proposition.

The court clearly found the offense was committed as a result of sexual compulsion or for purposes of sexual gratification. As required by *Hofsheier*, the court stated its reasons for this finding, including that "petitioner concedes that it was [sexually motivated]." The first step is therefore satisfied.

As to the second step, Dimacali again concedes the court "stated reasons for requiring lifetime sex offender registration . . . ." However, Dimacali disagrees with the court's reasoning, arguing it did not properly balance *all* factors weighing for and against imposition of a lifetime registration requirement.

The record does not support this contention. It shows the court complied with step two by stating its reasons for requiring Dimacali's lifetime registration as a sex offender. The court acknowledged reviewing the exhibits and the character letters included in the

10

petition. The court commended Dimacali "for the treatment that he has undergone and the steps he has taken to correct the life that he was leading that inflicted great harm on these young men." The court went on to explain, however, that it was "very, very troubled" by the underlying facts giving rise to the prosecution, and was especially concerned that Dimacali abused his position of trust and authority and used drugs and alcohol to do so. After weighing the reasons for and against registration, paying special attention to the need "to warn the public that there could be someone out there that could bring harm to children," the court denied the petition.

Dimacali contends the court abused its discretion because it did not properly consider all "mitigating circumstances," including the passage of time and his success in treatment. As already noted, the record shows otherwise. The court acknowledged that it "must weigh the reasons for and against registration in each particular case," and announced, "I've done that here."

In the end, the court determined Dimacali's postconviction conduct was outweighed by the nature of the offenses and the need to warn the public. This reasoning aligns with the dual purpose of the registration requirement: to keep track of those who might reoffend and to notify members of the public of the existence and location of sex offenders so they can take protective measures. (See *Hofsheier*, *supra*, 37 Cal.4th at p. 1196.) Here, the court's analysis falls within "the bounds of reason" under the applicable law and the relevant facts. (*People v. Williams, supra,* 17 Cal.4th at p. 162.)

11

## V

### *Discretionary Power to Weigh the Evidence*

Finally, Dimacali contends the court abused its discretion under section 290.006 because it improperly ignored material evidence submitted to it.

Specifically, Dimacali argues the court should have more seriously considered defense counsel's remarks concerning the results of a psychological evaluation conducted in 2001. Dr. Meredith Friedman, the psychologist responsible for the evaluation, insisted Dimacali "did not show a deviant pattern of sexual arousal that would be expected with a pedophile," and his "overall risk of future sexual deviance was considered to be low to low moderate." Dimacali claims the court refused to discuss the evaluation, or the impact of the evaluation, in making its decision, and this refusal amounts to an abuse of discretion.

Dimacali's argument is not persuasive for three reasons. First, he did not include Dr. Friedman's evaluation as an exhibit to his petition. As such, the court could not consider that evaluation when ruling on the petition. This court cannot consider the evaluation because it is not part of the appellate record. (*People v. Carrera* (1989) 49 Cal.3d 291, 317 ["[A]s review would require us to examine matters outside the present appellate record, these points are not properly before us on this appeal."].)

Second, even were the evaluation part of the record, *Hofsheier* does not require that the court make an express finding as to an offender's risk of reoffending; it requires only that the court " 'state on the record . . . the reasons for requiring registration.' " (*Hofsheier*, *supra*, 37 Cal.4th at p. 1197; see § 290.006.) If *Hofsheier* intended to require

12

an express finding as to an offender's risk of reoffending, it could have done so.  In addition, if *Hofsheier* intended to require that the court state on the record *all* the reasons for requiring or not requiring registration, or *all* factors that weighed into the court's decision, it could have done so.  It did not.  (*Hofsheier*, at p. 1197.)

Third, even if the court's decision to "ignore" the evaluation amounted to an abuse of discretion, this court could not interfere with the ruling unless it found the court "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]."  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9.)  Given the circumstances, Dimacali has not established that he poses a minimal risk of reoffending, or that the court imposed the registration requirement arbitrarily, capriciously or in a manner that resulted in manifest injustice.

## DISPOSITION

The order denying the petition is affirmed.


McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.


13