Filed 12/7/15  P. v. Herrera CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE FRANCISCO HERRERA,<br><br>    Defendant and Appellant. | B256122<br><br>(Los Angeles County<br>Super. Ct. No. VA130156) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Lori Ann Fournier, Judge.  Affirmed.

        Ann Krausz, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

_____

Jose Francisco Herrera appeals from the judgment entered following a jury trial in which he was convicted of two counts of attempted murder, one count of attempted voluntary manslaughter, and three counts of assault with a deadly weapon. Appellant contends the conviction must be reversed because the prosecutor committed prejudicial misconduct by misleading the jury regarding the provocation required to establish voluntary manslaughter. Appellant also contends that he was deprived of his constitutional right to effective assistance of counsel because defense counsel failed to object to the prosecutor's misstatements regarding provocation.

We find appellant forfeited his claim of prosecutorial misconduct and he was not deprived of his constitutional right to effective assistance of counsel. We therefore affirm the judgment.

## PROCEDURAL BACKGROUND

Appellant was charged with three counts of attempted murder[1] in violation of Penal Code sections 664/187, and three counts of assault with a deadly weapon in violation of section 245, subdivision (a)(1).[2] With respect to the first three counts, the information alleged pursuant to section 12022, subdivision (b)(1) that appellant personally used a knife, and as to all counts that he inflicted great bodily injury pursuant to section 12022.7.

The jury acquitted appellant on the attempted murder charge in count 2, but convicted him of the lesser included offense of attempted voluntary manslaughter in violation of sections 664/192, subdivision (a). The jury found appellant guilty as charged on the remaining counts, and found all knife and great bodily injury allegations true.

The court sentenced appellant to an aggregate term of 19 years in state prison.

---

[1] Count 1 charged appellant with attempted murder of Mary Linn, count 2 with attempted murder of Louis Linn, and count 3 with attempted murder of Joseph Guerrero.

[2] Undesignated statutory references are to the Penal Code.

## FACTUAL BACKGROUND

Approximately 10:30 p.m. on May 5, 2013, Mary Linn,[3] her fiancé Joseph Guerrero, Mary's stepmother Nanette Renee Souza-Linn (Renee), and Mary's father Louis Linn went to the Iguana Bar on Rosemead Boulevard in Pico Rivera. Later in the evening, Guerrero was not feeling well, so Mary and Guerrero stepped outside to the parking lot. Mary was leaning against the back of a car smoking a cigarette when a group of five to six people approached Mary and Guerrero. A fight broke out between Mary and a woman from the group, and they both fell to the ground. Not long after Mary got back on her feet, a male punched her in the stomach area. She later realized that she had been stabbed. Guerrero joined the fight and found himself exchanging blows with the bar's security guard, Cesar Abbott. While he was fighting Abbott, Guerrero was attacked by another person whom he could not identify. He then realized that he had been stabbed in the stomach, hip, and back.

Louis and Renee stepped out of the bar into the parking lot and heard a scream. They saw several people on top of Mary, who was on the ground. Louis started hitting and pulling people off Mary. He then found himself fighting with two men, one of whom was appellant, who he had seen attacking Mary. Both men ran away after Louis hit them, but appellant returned and punched Louis in his midsection three to five times. Louis realized he had been stabbed when he discovered that he was bleeding. During the melee in the parking lot, Renee saw appellant throwing punches at Guerrero while Guerrero was engaged in a fight with another man. Renee also witnessed appellant strike Mary twice with a jabbing motion to her side and stomach.

Abbott witnessed appellant's attack on Louis, Guerrero, and Mary. He saw appellant punch Louis several times in the stomach, and then observed appellant attack Guerrero, giving him uppercuts to the stomach. Abbott also saw appellant strike Mary with an upward motion.

---

[3] References to individuals are by surname unless other individuals involved in the case share the same surname.

DISCUSSION

Appellant contends that the prosecutor committed prejudicial misconduct by repeatedly misstating the legal standard of provocation during closing argument. As a result, the jury convicted appellant of attempted murder as charged in counts 1 and 3, and acquitted appellant of attempted murder and convicted him of attempted voluntary manslaughter only on count 2. Because defense counsel failed to object to the prosecutor's misstatements regarding provocation, appellant further claims that he was deprived of his constitutional right to effective assistance of counsel.

## 1.     Relevant Background

The trial court instructed the jury on attempted voluntary manslaughter based on heat of passion[4] and imperfect self-defense.

---

[4] The court instructed the jury with CALCRIM No. 603 (attempted voluntary manslaughter:  heat of passion):  "An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in a heat of passion. [¶] The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if: [¶] 1. The defendant took at least one direct but ineffective step toward killing a person; [¶] 2. The defendant intended to kill that person; [¶] 3. The defendant attempted the killing because he was provoked; [¶] 4. *The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than judgment* [italics added]; [¶] 5. The attempted killing was a rash act done under the influence of intense emotions that obscured the defendant's reasoning or judgment. [¶] Heat of passion does not require anger, rage, or any specific emotion.  It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. [¶] For sudden quarrel or heat of passion to reduce an attempted murder to attempted voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it.  While no specific type of provocation is required, slight or remote provocation is not sufficient.  Sufficient provocation may occur over a short or long period of time. [¶] It is not enough that the defendant simply was provoked.  The defendant is not allowed to set up his own standard of conduct.  You must decide whether the defendant was provoked and whether the provocation was sufficient.  In deciding whether the provocation was sufficient, consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than judgment. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant attempted to kill

In closing argument the prosecutor urged the jury to reject the heat of passion defense and find appellant guilty of attempted murder on all three counts. With respect to the provocation necessary to establish the defense of heat of passion, the prosecutor made the following remarks.

"You may consider the fact that there was a fight, you may consider the fact that there might have been provocation by the person who was attacked or under attack, but you also have to ask yourself at the time that [appellant] stabbed these individuals, was [appellant] acting under the direct influence of the provocation, and *would a reasonable person have done what [appellant] did?*" (Italics added.)

"Very important. *Would a reasonable person have done what [appellant] did that night to these three people? And the answer to that is a resounding no. No reasonable person would have done this.* And in considering whether or not you want to reduce the crime of attempted murder to the crime of attempted voluntary manslaughter, you need to go through the entire sequence of events that occurred that night." (Italics added.)

"And then [appellant] delivered a blow. After [Guerrero] was on the ground, [appellant] went and stabbed him. *Now, would a reasonable person have done that? Absolutely not.* You get mad, so you come back with a knife and stab everybody who you think is in the family that was involved*? No reasonable person would have done what [appellant] did.*" (Italics added.)

"And then from there [appellant] runs to Louis. . . . [¶] [Appellant] introduced a weapon. [Appellant] charged him. [Appellant] was far enough away from Louis where Louis was not a danger to him. [Appellant] charged him. Clearly he was angry. [¶] *Would a reasonable person have done that? Absolutely not.* [¶] And then there is Mary. . . . [¶] [Appellant] runs around the tree, and while [Abbott's] back is to him, he

someone and was not acting as a result of sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of attempted murder."

5

then stabs Mary. *What reasonable person would have done that?  What man would have done that?*"  (Italics added.)

Defense counsel neither objected nor requested an admonition regarding the prosecutor's remarks about provocation.  Instead, appellant argued that his only crime was simple assault, or alternatively that the offense should be reduced to attempted voluntary manslaughter based on imperfect self-defense.  The defense made no argument concerning heat of passion or the provocation required to establish the defense.

**2.        Appellant's Claim of Prosecutorial Misconduct Has Been Forfeited**

In order to preserve a misconduct claim for review on appeal, "'a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper arguments.'"  (*People v. Linton* (2013) 56 Cal.4th 1146, 1205; *People v. Thomas* (2012) 54 Cal.4th 908, 937.)  Unless a defendant can demonstrate that an objection would have been futile or an admonition would not have cured the error, even the assertion of ineffective assistance of counsel will not automatically transform a forfeited claim into one that is cognizable on appeal.  (*People v. Thompson* (2010) 49 Cal.4th 79, 121, fn. 14.)

The underlying purpose of this requirement is to """"encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had . . . ."'"  [Citation.]"  (*People v. Saunders* (1993) 5 Cal.4th 580, 590.)  "The objection requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'  [Citation.]"  (*People v. Partida* (2005) 37 Cal.4th 428, 434.)  Indeed, it would be """"*unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial."'" [Citation.]"  (*People v. Saunders*, *supra*, 5 Cal.4th at p. 590.)

Here, appellant acknowledges the absence of any objection or request for a curative admonition at trial concerning the prosecutor's misstatements regarding provocation.  Further, appellant does not claim that an objection would have been futile

6

or that an admonition would not have cured any harm.  Accordingly, we deem appellant's claim of prosecutorial misconduct forfeited.

3.      **Appellant's Claim of  Ineffective Assistance of Counsel Fails Because the Prosecutor's Misstatements Regarding Provocation Were Not Prejudicial**

Appellant seeks to avoid forfeiture of his claim by asserting that his defense counsel's failure to object to the prosecutor's misstatements regarding provocation deprived him of effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution.  (See *McMann v. Richardson* (1970) 397 U.S. 759, 771, fn. 14 [90 S.Ct. 1441].)

""""[T]o demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.'  [Citations.]  Second, he must also show prejudice flowing from counsel's performance or lack thereof."'  [Citation.]"  (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 466–467.)  "Prejudice means a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'  [Citation.]  A reasonable probability means a 'probability sufficient to undermine confidence in the outcome.'  [Citation.]"  (*People v. Najera* (2006) 138 Cal.App.4th 212, 225.)  Thus, to prevail appellant must show both that the prosecutor committed misconduct and that he was prejudiced by such misconduct.

Because we find the prosecutor's misstatements regarding provocation were harmless, and do not require reversal, appellant cannot meet his burden of showing a reasonable probability of a different outcome had defense counsel made a timely objection.  We therefore reject appellant's claim of ineffective assistance of counsel.

In *People v. Beltran* (2013) 56 Cal.4th 935 (*Beltran*), our Supreme Court explained the legal standard of provocation, holding that to adopt "a standard requiring such provocation that the ordinary person of average disposition would be moved to *kill* focuses on the wrong thing.  The proper focus is placed on the defendant's state of mind, not on his particular act.  To be adequate, the provocation must be one that would cause

an emotion so intense that an ordinary person would simply *react*, without reflection. . . . [P]rovocation is not evaluated by whether the average person would *act* in a certain way: to kill. Instead, the question is whether the average person would *react* in a certain way: with his reason and judgment obscured." (*Beltran*, at p. 949.)

Here, the prosecutor incorrectly informed the jury that provocation is sufficient to reduce a murder to manslaughter only if *a reasonable person would have done what the defendant did*. Although the prosecutor's remarks clearly misstated the legal standard regarding provocation under *Beltran*,[5] we nevertheless find that the statements do not require reversal in this case.

A prosecutor's misconduct constitutes a federal constitutional violation """"when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.""" [Citations.]" (*Hill*, *supra*, 17 Cal.4th at p. 819; *People v. Thomas*, *supra*, 54 Cal.4th at p. 937.) Conduct by a prosecutor is misconduct under state law """"only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." [Citation.]"" (*People v. Linton*, *supra*, 56 Cal.4th at p. 1205; *People v. Gonzales and Soliz*, *supra*, 52 Cal.4th at p. 305; *Hill*, *supra*, 17 Cal.4th at p. 819.) In this regard, "What is crucial to a claim of prosecutorial misconduct is not the good faith *vel non* of the prosecutor, but the potential injury to the defendant. [Citation.] When . . . the claim focuses on comments made by the prosecutor before the jury, a court must determine at the threshold how the remarks would, or could, have been understood by a reasonable

---

**5** Arguing that the prosecutor's remarks did not rise to the level of a "deceptive or reprehensible method of argument" that would constitute prosecutorial misconduct (*People v. Linton*, *supra*, 56 Cal.4th at p. 1205; *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 305; *People v. Hill* (1998) 17 Cal.4th 800, 819 (*Hill*)), respondent asserts that "[t]he prosecutor's remarks are not without support in the law." To the extent respondent's position is that adequate provocation for voluntary manslaughter requires a finding that an ordinary person of average disposition would *kill*, the argument was rejected by our Supreme Court in *Beltran*. (See *Beltran*, *supra*, 56 Cal.4th at pp. 951–952 & fn. 10.)

juror.  [Citations.]" (*People v. Benson* (1990) 52 Cal.3d 754, 793.)  The standard is an objective one.  (*People v. Berryman* (1993) 6 Cal.4th 1048, 1072.)  To determine whether there is prosecutorial misconduct under state law, """"the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."' [Citation.]" (*People v. Linton*, *supra*, 56 Cal.4th at p. 1205; *People v. Morales* (2001) 25 Cal.4th 34, 44.)

In *Hill*, the prosecutor engaged in a pattern of conduct which included misstating the facts relating to the evidence and witnesses' testimony, misstating the law, making improper references to alleged facts outside the record, and threatening to charge a witness with perjury if the witness testified for the defense.  The court found the prosecutor's conduct to be so egregious that it violated the defendant's due process rights under the United States Constitution and thereby amounted to prosecutorial misconduct requiring reversal.

No such pattern appears in the instant case, and, unlike *Hill*, here the prosecutor's misstatements of the legal standard regarding provocation were not so egregious as to amount to a denial of due process.  (*People v. Thomas*, *supra*, 54 Cal.4th at p. 937.)  As the Supreme Court has explained, "'it is not enough that the prosecutor's remarks were undesirable or even universally condemned.' [Citation.]  The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' [Citation.]" (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 [106 S.Ct. 2464].)

The prosecutor's misstatements regarding provocation would also not require reversal under state law because there appears no reasonable likelihood that the jury relied on the prosecutor's remarks to appellant's detriment.  The trial court not only instructed the jury on the correct legal standard of provocation by giving CALCRIM No. 603, it also instructed the jury:  "You must follow the law as I explain it to you, even if you disagree with it.  If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions. [¶] Pay careful attention to all of these instructions and consider them together"; "Nothing that the attorneys say is evidence";

and, "In their opening statements and closing statements, the attorneys discuss the case, but their remarks are not evidence."

In the absence of any evidence of confusion on the part of the jury, "[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852; *People v. Williams* (2002) 170 Cal.App.4th 587, 635.) This presumption is the "'crucial assumption underlying our constitutional system of trial by jury.' [Citations.]" (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

There was no indication in this case that the jury was confused or failed to follow the trial court's instructions. To the contrary, the jury's verdict on count 2—acquitting appellant on the charge of attempted murder and convicting him on the lesser included offense of attempted voluntary manslaughter—reveals a nuanced understanding of the instructions and careful application of the law to the facts of the case. (See *People v. Lewis* (2001) 26 Cal.4th 334, 390.) We therefore find the prosecutor's misstatements regarding provocation resulted in no prejudice to appellant, and thus do not require reversal.

Because appellant cannot meet his burden of showing a reasonable probability that he would have obtained a better result had defense counsel made a timely objection to the prosecutor's remarks, his claim of ineffective assistance of counsel fails.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


ROTHSCHILD, P. J.


CHANEY, J.

10