Filed 9/19/25  P. v. Garcia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LARRY GARCIA,<br><br>    Defendant and Appellant. | D083924<br><br><br>(Super. Ct. No. SCS219199) |

APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Sahar Karimi, Deputy Attorneys General, for Plaintiff and Respondent.

Larry Garcia appeals from an order of the trial court denying his request for resentencing following a murder conviction.  The Department of Corrections and Rehabilitation (CDCR) identified Garcia as an individual serving a term that included a prison prior, now rendered invalid by Penal

Code section 667.5, subdivision (b).[1]  As part of the resentencing, Garcia asked the court to also strike a one-year knife enhancement and/or a prior strike, which had caused his indeterminate term to be doubled from 25-years to life to 50-years to life.  The court denied the request, finding a lesser sentence would be a danger to public safety.  Garcia appeals and asserts the trial court abused its discretion by failing to apply a forward-looking analysis, and that the record does not support the trial court's findings.  We conclude Garcia has not met his burden to establish error on appeal and affirm the judgment.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Underlying Crime

Garcia fatally stabbed Araceli Granados, a 27-year old woman, in April 2007.  Both were members of the "Sidro" street gang.

Garcia, Granados, and several other gang members had gathered at a hotel room, doing drugs, on the day of the murder.  Late that evening, a smaller group including Garcia and Granados drove to a remote area known as "the Pits."  One of the gang members asked another female gang member to "check" or beat up Granados.

When the fighting stopped, Granados yelled, "Leave me alone!" and started running towards a paved road.  Garcia stabbed Granados multiple times as she attempted to run away.  He then walked back to the vehicle and everyone left.  Granados's body was discovered on the side of the road the next day.  An autopsy revealed that Granados died from a stab wound to the mid chest, which perforated her heart, causing her to bleed to death.

A jury convicted Garcia of conspiracy to commit assault and murder and found true allegations that he acted in association with a criminal street

---

[1]     Further unspecified statutory references are to the Penal Code.

2

gang and personally used a deadly weapon, to wit, a knife. Garcia further admitted a prison prior and a strike prior. The trial court sentenced him to an indeterminate term of 50 years to life plus a determinate term of 12 years in prison, the latter comprised of 10 years for the gang enhancement, one year for the knife enhancement, and one year for the prison prior. Garcia appealed, and this court struck the 10-year sentence on the gang enhancement and otherwise affirmed the conviction.

**B.      Garcia's Petition for Resentencing**

In 2023, the CDCR identified Garcia as a person currently serving a prison term that includes an enhancement imposed pursuant to section 667.5, subdivision (b), which the legislature subsequently made legally invalid. The trial court appointed counsel for Garcia, and he filed a motion for resentencing under sections 667, 1172.75, and 1385. Garcia asserted the trial court had jurisdiction to conduct a full resentencing and asked the trial court to strike the one-year knife enhancement and/or the prior strike under section 1385, subdivisions (b) and (c).

Regarding the one-year knife enhancement, Garcia asserted application of the enhancement would result in a discriminatory racial impact as described in section 754, subdivision (4)(a), and that the offense was connected to prior childhood trauma, including a serious head injury that he incurred as a toddler. Regarding the strike prior, Garcia asserted there were substantial mitigating circumstances, including his young age at the time of the murder, his prior trauma, and his remorse. In addition, he asserted he would be eligible for youth offender parole if he had not admitted the prior strike.

The People opposed the request. They asserted that imposing a lesser sentence would endanger public safety and pointed out that Garcia had an

extensive record of misconduct while in prison, including mutual combat, battery on other inmates, and possession of dangerous contraband. Thus, they asserted Garcia had not demonstrated a significant level of rehabilitation while in prison.

At the hearing, defense counsel pointed out that Garcia "is 47 years old, and as he ages, he becomes less of a risk." She also noted that Garcia was using methamphetamine at the time of the offense and had maintained a period of sobriety while in prison. The People argued that Garcia's record in prison demonstrated that he was not making strides towards rehabilitation.

The trial court noted the underlying crime was "a horrible crime," and stated that it was also "even more importantly" concerned with what had been going on since Garcia was sentenced in 2010. The court noted that Garcia had done some important work, but that "actions speak louder than words," and his actions in prison "speaks to the danger that he represents." Thus, after reviewing all the evidence, the court found, "by clear and convincing evidence that imposing a lesser sentence would endanger public safety." The court struck the one-year prison prior under section 667.5 but otherwise denied Garcia's petition.

Garcia filed a timely appeal.

## II.    DISCUSSION

Garcia asserts the trial court abused its discretion when it denied his request to deny the one-year knife enhancement because it failed to apply the correct, forward-looking legal standard, and because the record does not demonstrate that striking the one-year enhancement would pose a risk to public safety. He asserts further that, to the extent the People assert that he forfeited the argument by failing to raise it in the trial court, which they do, that his trial counsel provided ineffective assistance of counsel.

4

### A.    Applicable Legal Standards

Effective January 1, 2022, section 1172.75 declared that certain one-year sentence enhancements that were imposed prior to January 1, 2020 pursuant to former section 667.5, subdivision (b) are legally invalid, and provides a mechanism for resentencing individuals serving judgments that include one or more of those enhancements.  (§ 1172.75, subds. (a)–(c).)

Pursuant to section 1172.75, subdivision (b), the Secretary of the CDCR and the administrators for each county jail "shall identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)," and provide certain information about those individuals to the sentencing court.  Upon receiving this information, the sentencing court "shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a).  If the court determines that the current judgment includes an enhancement described in subdivision (a), the court shall recall the sentence and resentence the defendant."  (§ 1172.75, subd. (c).)

Section 1172.75, subdivision (d) specifies that the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety."  (*Id.*, subd. (d)(1).)  In addition, the resentencing court shall consider "any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing," (*id.*, subd. (d)(2)) and may consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have

5

reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (d)(3).)

Since Garcia's original sentencing, "Senate Bill No. 1393 (21017-2018 Reg. Sess.) (Stats. 2018, ch. 1013 (§§ 1, 2)) amended sections 667 and 1385 to allow a court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes." (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 221 (*Gonzalez*).) In addition, "Senate Bill No. 81 (2021-2022 Reg. Sess.) effective January 1, 2022 (Stats. 2021, ch. 721 § 1) . . . , amended section 1385 to include subdivision (c). Under subdivision (c)(1), the court 'shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' " (*Gonzalez,* at p. 221.)

"Under [section 1385,] subdivision (c)(2), in exercising its discretion, 'the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.' (§ 1385, subd. (c)(2).)" (*Gonzalez, supra,* 103 Cal.App.5th at p. 221.) " ' "Endanger public safety" means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Ibid.*)

In *Gonzalez*, another panel of this court concluded that the plain language of section 1385, subdivision (c)(2) requires a trial court to consider not only whether the defendant *currently* poses a risk to public safety, but

6

also the danger as of the date the defendant might be released if a given enhancement were struck and whether any such release would be subject to a review by the Board of Parole Hearings and the Governor. (*Gonzalez, supra,* 103 Cal.App.5th at pp. 230−231.)

The *Gonzalez* court explained, "section 1385, subdivision (c)(2) focuses on the danger associated with the dismissal of an enhancement, phrasing the inquiry as whether 'dismissal of the enhancement would endanger public safety,' and whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' (§ 1385, subd. (c)(2).) Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228, italics omitted.)

"Further, an inquiry into whether public safety will be endangered by the dismissal of an enhancement for a defendant serving a lengthy indeterminate sentence should also take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor), who will have the opportunity to assess the defendant's dangerousness at that time." (*Gonzalez, supra,* 103 Cal.App.5th at p. 228.)

"In reviewing the trial court's determination that dismissal of [Garcia's one-year knife] enhancement would endanger public safety, we apply an

abuse of discretion standard of review.  [Citation.]  As relevant here, 'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' " (*Gonzalez, supra,* Cal.App.5th at p. 225.)  However, we do not presume error on appeal; the appellant must "affirmatively demonstrate that the trial court misunderstood its sentencing discretion." (*People v. Davis* (1996) 50 Cal.App.4th 168, 172 (*Davis*).)  An appellant's "citation to a silent record is insufficient to meet [this] burden to demonstrate an abuse of discretion." (*People v. Coleman* (2024) 98 Cal.App.5th 709, 725.)

## B. Forfeiture

We first address the People's assertion that Garcia forfeited his argument that the trial court did not apply the correct forward-looking legal standard by failing to raise it in the trial court.

" '[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' " (*Gonzalez, supra,* 103 Cal.App.5th at p. 225.) " 'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)  For this reason, "a party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208.)

Further, as relevant here, section 1385, subdivision (a) only requires a trial court to state its "reasons for the dismissal." (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)  It "does not require a court to 'explain its decision not to exercise its power to dismiss or strike.' " (*Ibid.*)  Thus, the trial court was under no statutory obligation to provide a statement of

8

reasons when declining to strike the one-year knife enhancement. If Garcia believed that the judge failed to consider or properly evaluate the relevant considerations, he could, and should, have pointed out the error and/or requested a statement of reasons. (*People v. Saunders* (1993) 5 Cal.4th 580, 590 [" ' " 'The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.' " ' "].)

Garcia concedes that his trial counsel did not specifically point out or argue that the court needed to apply a forward-looking analysis, or that it failed to do so. However, he asserts his claim remains cognizable on appeal because his trial counsel provided ineffective assistance of counsel by failing to raise such an argument or concern. We disagree.

As we explain next, there was nothing in the record here to suggest that the trial court failed to apply the correct analysis, and thus we cannot say that there was no conceivable tactical reason for trial counsel's decision not to argue the issue further. (See *Strickland v. Washington* (1984) 466 U.S. 668, 686−688 [explaining the requisite showing for a claim of ineffective assistance of counsel]; *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [" 'where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions' "].)

Regardless, because this is an evolving area of law, and because Garcia raises the ineffective assistance of counsel claim, we will exercise our discretion to address the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn 6.)

## C.     Garcia Has Not Met His Burden to Demonstrate Error

Garcia relies on *Gonzalez*—and *People v. Williams* (2018) 19 Cal.App.5th 1057 (*Williams*), on which the *Gonzalez* court relied—to assert the trial court here failed to adequately consider whether dismissal of the one-year knife enhancement would endanger public safety *at the time he could be released if the enhancement were dismissed*.

Garcia notes that the trial court discussed his poor behavior in prison and asserts that it failed to discuss his age and associated diminished capacity at the time he would become eligible for parole under the remaining 50-year-to-life sentence.  But the trial court was not required to discuss every factor it considered in deciding *not* to strike the one-year enhancement.  (§ 1385, subd. (a); *Carmony, supra,* 33 Cal.4th at p. 376.)  Rather, it is incumbent upon Garcia to establish that the trial court did *not* consider the applicable factors despite the presumption that the trial court knew and followed the applicable law.  (*Carmony,* at p. 376.)

Here, the court noted Garcia's poor behavior in prison in the context of the People arguing that behavior demonstrated a lack of any significant progress towards rehabilitation.  Accordingly, the court found, "by clear and convincing evidence that imposing a lesser sentence would endanger public safety."  Notably, the court did not focus on whether Garcia was *presently* a danger to society.  It stated that "imposing a lesser sentence would endanger public safety," thereby focusing on the lesser sentence and tying its ruling to the potential future endangerment of public safety.  While the trial court should have considered the potential danger to public safety in the context of his 50-year-to-life sentence and the associated parole board hearing, there is nothing in the record before us conclusively demonstrating that the trial

court did not consider those factors, despite trial counsel's failure to affirmatively raise them.

In *Gonzalez,* trial counsel did present argument about *Williams* and the forward-looking inquiry the court needed to make and, in response to that argument, the trial court did make statements on the record that at least suggested it was *not* applying the correct framework. (*Gonzalez, supra,* 103 Cal.App.5th at pp. 223–224 [setting forth an exchange between counsel and the trial court in which the trial courts remarked that Gonzalez did, *presently*, represent a danger to society].) Here, neither defense counsel nor the trial court made any such statement. In the absence of any indication in the record to the contrary, we presume the trial court understood and followed the law. (See *Davis, supra,* 50 Cal.App.4th at p. 172.)

Finally, Garcia asserts the trial court must not have considered the relevant factors of his lengthy sentence and the requisite review by the parole board, and that substantial evidence does not support the trial court's finding, because "one year can make no concrete difference in terms of the risk to public safety." In making this argument, Garcia asks this court to conclude that any refusal to dismiss a one-year enhancement on a lengthy life sentence would necessarily be error. We decline to do so.

If we were to accept Garcia's argument, considerations of public safety would never apply in cases where the defendant is serving an indeterminate sentence, because their release would always be subject to parole board review. But that is not what the Legislature decided when it amended section 1385. If the Legislature had wanted to strike all one-year enhancements in cases where the defendant was also serving an indeterminate term, it certainly could have done so, but it did not. The same is true for defendants of a certain age. There is no legal limitation, statutory

11

or otherwise, that suggests a defendant ceases to be a danger to public safety based solely on reaching a certain age. Rather, the imposition of both the determinate and indeterminate terms establish a baseline to ensure parole hearings are not conducted until there is at least some possibility that the defendant will no longer be a danger to public safety.

Here, Garcia stabbed the victim as she ran away and left her for dead in a remote area. Since being in prison, he has demonstrated minimal progress towards rehabilitation. Under the applicable statutory scheme, the trial court had to decide, in March 2024, whether a lesser sentence would endanger public safety. Considering the available information, it concluded that imposition of a lesser sentence would endanger public safety. Garcia has not met his burden to establish the trial court's ruling was an abuse of discretion or that it was unsupported by the evidence.

### III.  DISPOSITION

The trial court's order is affirmed.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.